UNITED STATES OF AMERICA
DISTRICT COURT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) |  |
|  | ) |  |
|  | ) | Case No.: 04cc30007 MAP |
| v. | ) |  |
|  | ) |  |
|  | ) |  |
| RAFAEL FONTANEZ | ) | MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY |

28 U.S.C. § 2255

---

## DENIAL OF EFFECTIVE ASSISTANCE OF COUNEL

---

## FAILURE TO PRESENT A DEFENSE

The petitioner submits this application for relief under the guidelines set forth in Strickland v. Washington, 466 U.S. 668. The Strickland criteria for relief require that two separate prongs be met in order to make a determination of appropriate relief. First, that counsel's performance was deficient and second that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Id at 670.

## I. DEFICIENCY OF COUNSEL'S PERFORMANCE

## A. FAILURE TO PRESENT A DEFENSE

1

It is the position of petitioner that the actions and omissions of counsel were both professionally unreasonable and prejudicial to the fairness and reliability of the proceedings in the District Court. To address those concerns petitioner addresses the first prong of the Strickland test concerning the actions of counsel as they may be considered ineffective and professionally unreasonable.

There is the undeniable principle in law that every petitioner has a right to pursue an affirmative defense, and it is the obligation of the counsel to explore the benefits or merits of that defense, Matthews v. U.S., 475 U.S. 58, at 63. The facts herein will show that counsel did not conduct an investigation into the prosecution's theory of conspiracy, despite the existence of material witnesses and documentary evidence to rebut the indictment and all its claims.

Strickland has clearly laid the touchstone on counsel's duty to investigate all available leads, facts, evidence, witnesses, laws, and circumstances involved in a particular case, in order to allow counsel to make a well-informed choice, as to a viable and favorable outcome or defense best-suited to protect a client's interest(s). Id at 682. The key to an investigation, particularly where it involves one plausible line of defense, is the value of the available evidence, and whether it harmonizes and possibly meets the ends sought by the defense. In this case counsel did not explore the evidence or witnesses to determine veracity or utility, nor asses their actual benefit or harm before alienating petitioner's defense. It has been consistently stated that a complete failure of counsel to interview readily available witnesses constitutes ineffective assistance of counsel. Crisp v. Duckworth, 743 F2d 580 (7th Cir, 1984).

## B. WITNESSES

In this case, prior to trial counsel was given the names and addresses of several witnesses who could provide direct evidence regarding the association between petitioner and codefendant Anthony Bledsoe. Collectively, these witnesses have direct knowledge that an indicted codefendant admitted the innocence and exoneration of this petitioner. See: Exhibits (A - D). These persons were available and willing to testify; however, counsel never contacted these persons to determine their usefulness or reliability relative to this matter. In Porcaro v. U.S., 784 F.2d 38 (1st Cir. 1988), this circuit said that a complete failure to call available and disinterested witnesses undermines the reliability of the proceedings. Id.; See also: Mongomery v. Peterson, 846 F.2d 407 (7th Cir. 1988).

Until such time as a counsel can justify such an aforementioned inaction the courts have unanimously concluded that, "... a trial counsel cannot stand behind the shield of trail strategy for a complete failure to interview readily available witnesses". Id. Duckworth, supra at 584.

The qualities of the witnesses' testimony are positive and carry with it a probative nature. They in essence, would legitimize the relationship of the petitioner and the other codefendants. Collectively and individually these persons would have testified that defendant Bledsoe told them that petitioner was not involved in this matter and it was his intent to exonerate petitioner from his (Bledsoe's) criminal activities. The value of that testimony before the jury would have resulted in the prosecution being required to prove a specific intent compromising both intent to agree and intent to commit substantive offence by a knowing participation of petitioner. See: U.S. v. Izzy, 613 F.2d 1205 (1st Cir.1980).

3

A proper pleading or prosecution would have required more than mere allegation, it would require a specific act in furtherance of the conspiracy that was knowingly and intentionally illegal. See: Scarpa v. Dubois, 38 F.3d 1 (1st Cir. 1999); Browing Ave. Realty Co. v. Rosenshein, 774 F.Supp. 129, at 143(S.D.N.Y. 1991). Counsel can not rely on or exercise the inherent right of strategy, as this right can not exist without the benefit of information acquired from the unsought leads. By counsel's failure to use these potentially beneficial witnesses not only was the prosecution's burden reduced beneath reasonable doubt, but, petitioner was left without an affirmative defense and supporting facts. Because there is direct proof that the defense of petitioner was not unreasonable or incredible, and counsel prevented the presentation of that defense prejudice is presumed. Tejada v. Dubois, 142 F.3d 18 (1st Cir. 1998).

## C. EVIDENCE

Throughout the proceedings, it was the position of the prosecution that petitioner was an active participant with knowledge a forehand of all the goals of the conspiracy. It was imperative that counsel, rebut that presumption with factual testimony and evidence. Above the court will note that there is ample proof that counsel neither researched nor considered the benefits of the witnesses' testimony. What was not apparent in the proceedings previously is that there did exist documentary evidence to support the financial and social basis of the relationship, namely Employer-Employee, between petitioner and defendant Bledsoe.

Prior to the start of the suppression hearing and the trial petitioner afforded counsel access to both the aforementioned witnesses and the business documents and permit from the Commonwealth of Massachusetts. Counsel neither validated nor researched the import of the utility of these documents.

4

The business documents include, but are not limited to; business establishment, employer contracts, financial records, insurance policies and contract, business and appointment scheduling, and business permit. Independently these would have had a little effect before the jury. Collectively, they would have afforded the jury an independent basis to determine the legitimacy of the relationship between the codefendants. Absent their production the prosecution was permitted to infer some financial gain by petitioner. Although it is well know that, "… mere proximity to a crime, or association with persons believed to be involved in a criminal act, is not sufficient to infer criminal intent, knowledge, or participation". Counsel did not accent or address the actus reus of petitioner's involvement. See: U.S. v. Ocampo, 964 F.2d 80, 82-83 (1st Cir. 1992); U.S. v. Delutis, 722 F.2d 902 (1st Cir. 1983).

The most important document in the possession of counsel was the business permit by the Commonwealth of Massachusetts. To begin with, it legitimized the assembly of these persons. Aside from that it gave justification for the financial stability of petitioner. On the day of arrest the agents present seized receipts, the business permit, and daily planners. The benefit of those documents, specially the daily planners, would have been that many of the dates in the indictment could have been crossed referenced to legitimate meetings with other business associates.

Aside from the benefit of proving the social and business legitimacy of petitioner's affiliations, these documents would have shown that petitioner was investing into his venture titled SHEAR PERFECTIONZ. Having purchased supplies that were being used for renovation, maintenance, and daily operations of the SHEAR PERFECTIONZ establishment, the prosecution would not have been able to infer a criminal association of benefit by petitioner. The result of counsel's in-actions is that petitioner was forced to legitimize his income, his social network, and

lifestyle, without an advocate or explanation for his solvency. Any reasonable attorney would have known that under the elements test created by, <u>Schmuck v. U.S.</u>, it was imperative that counsel, rebut not only the thesis of the prosecution's case, but the behavior they sought to prosecute. See: <u>Schmuck v. U.S.</u>, 489 U.S. 705, 103 L. Ed 2d 734; and <u>Liprota v. U.S.</u>, 471 U.S. 419, 85L.Ed. 2d 734.

The courts have numerous instances where the evidence initially points to a willing participation of criminal behavior by a defendant, i.e. only to later determine, after a careful examination of all the evidence, that the association of persons involved in a criminal endeavor require a showing of willingness and intentional participation by every party allegedly involved in a conspiracy. See: <u>U.S. v. Hyson</u>, 721 F2d 856 (1st Cir. 1983); <u>U.S. v. Soto</u>, 716 F.2d 989 (1st Cir. 1983). In this case by the failure of counsel to rebut the prosecution's evidence the prosecution was permitted to infer participation based on an alleged confession. There is no justification which will permit an attorney to forego exculpatory evidence and testimony which exonerates an accused, merely to rely on the weakness of the prosecution's case.

Notwithstanding all of the benefits petitioner would have received had counsel used the aforementioned evidence and testimony, to a certain extent it would have been challenged by the admission of the alleged statement. However, the issue of this confession's admissibility is cast in a new light, if the court would consider that the same evidence which was available for trial would likewise have been available for the suppression hearing. In making the determination weighted against the self-interest aspect of the confession's voluntariness the court would have ask, why would a defendant which so much to gain through explanation, facts, and evidence admit to a crime were his alleged co-conspirator voluntarily exonerated him. If the court had known that codefendant Bledsoe

was willing to aid in the release of this petitioner it may have been a significant factor in the court's decision making process. Unfortunately, counsel did not allow the court or trial jury the breadth of this evidence.

Having outlined the professional omissions of counsel's performance, the most important factor to now consider is what counsel's strategy was, and how did that strategy justify the alienation of witnesses and evidence to rebut the prosecution's case. Counsel's decision is questionable, unprofessional, and clearly unreasonable, in that, it waived petitioner's only defense and its objectives at trial without investigating or researching its value to the defense.

## II. PREJUDICE CAUSED BY COUNSEL'S PERFORMANCE

The part of petitioner's claims regarding the prejudice component of <u>Strickland</u> specifically address, the failure of counsel to adequately appraised himself of the law which govern cases and protocol in matters such as this, <u>U.S. v. Cronic</u>, 466 U.S. 648, 80 L.Ed 2d 657. Concerning the aforementioned, regarding the failure of counsel to present a defense, this issue takes the position that, had it not been for counsel's failure to use the witnesses and documentary evidence that were supplied to him. The outcome of the proceedings may have been different.

Above the court will notice that petitioner sought to have the court determine the reasonableness of counsel's decision not to interview the available witnesses. Herein petitioner provides the factual basis of the prejudicial effect of that decision and those which followed. Although there is an abundance of case law to support a reversal or vacating of the conviction where

there is a complete absence to investigate by counsel. The importance in this matter is extended to whether these witnesses would have been able to undermine the alleged making of the confession, when considering that the agent's blatant inconsistent circumstances surrounding its alleged making renders it suspect, and adds the necessary support for petitioner's intended defense of police fabrication. See: <u>Coss v. Lackawanna County Dist. Att.</u>, 204 F.3d 453 (3rd Cir. 2000).

Notwithstanding the aforementioned, there is counsel's error, at the suppression hearings, of basing petitioner's claim under a <u>Miranda</u> violation. Although <u>Miranda</u> is applicable concerning the point at which an interrogation should cease, the issue here is directed to whether the confession was actually made by petitioner. If this court would reference the precendent in this circuit, it would take note that where there are blatant inconsistencies and factual inaccuracies by the government an evidentiary hearing is required to determine prejudice. See: <u>Tejada v. Dubois</u>, 142 F.3d 18 (1st Cir. 1998).

In this case counsel brought a Motion before this court for suppression of a confession that was taken involuntarily. However, it seems that the court better understood the argument, and appropriately characterized the dilemma of petitioner, where it said,

> "This case presents a rather unusual factual scenario. Defendant's testimony, in essence, was that he was generally aware of his <u>Miranda</u> rights, though he was never formally informed of it, and exercised these rights by making no inculpatory statements and requesting to speak to an attorney. While his request was ignored for a lengthy period of time, he denies ever making any inculpatory statements.

> … The real dispute in this case relates primarily to whether the defendant says what the government says he said, not to the <u>Miranda</u> issue". See: Order of the Court – Motion to Suppress, Dkt. # 63, Page 2.

Petitioner's claim throughout these proceedings has been to raise a defense of police fabrication and misconduct. During the interrogation, for purposes of our inquiry, the most important persons present would have been agents Soto and Jusino. The importance of these two persons can be summarized by the blatant contradictions of their testimony regarding the participation or voluntary confession of petitioner. In the [Mot.Supp. Vol. I, p. 27], agent Soto states that agent Jusino witnessed the petitioner make a voluntary confession. However, in the [Mot.Supp. Vol. II, p. 13], agent Jusino states that at no time did he ever witness the petitioner making any statements to agent Soto, or any other agent. Standing alone, that may have given the court or jury sufficient basis of an instruction for police fabrication. The contradiction becomes more important when the court considers that agent Soto, at the Suppression Hearing, initially stated never taking notes, then, at trial he alleged to have taken notes during the course of the interrogation, and subsequently destroying them.

The alleged confession is the only evidence of petitioner's involvement in this conspiracy. It is difficult to understand and counsel refused to address, how an agent as experienced as agent Soto could alleged notes of the confession which are vital in seeking a conviction, and also trivialize the importance of information relative to an interstate narcotics network's. At trial, agent Soto said that he transcribed notes during the interrogation that had an approximate length of two sentences [Tr.Trans. Vol IV, p. 531]. The gymnastics by which agent Soto was able to transcribe all of that information into two sentences should have given counsel sufficient concern to consider a fabrication defense, especially when agent Soto himself said that the evidentiary value of these notes was significant. See: [Tr.Trans. Vol IV, p. 501]; Also Dubois, 142 F.3d AT 24.

As illustrated above, this case, in part, presents factual instances where <u>Miranda</u> and <u>Brady</u> could have been applicable, but neither of these two protections and remedies were\are appropriate to petitioner's case. In essence, the determination of a <u>Miranda</u> violation by a court ordinarily begins with the evaluation of an existing statement, and in the determination of a <u>Brady</u> violation, the court considers the materiality of the suppressed evidence, i.e. agent Soto's original notes of the alleged confession. An argument directly premised upon neither <u>Miranda</u> nor <u>Brady</u>, concedes that petitioner made a statement against self-interest and the existence of notes to support the statement. These types of arguments goes contrary to petitioner's intended defense against alleged confession, i.e. it being the fabricated product of the agents, particularly of agent Soto's, and that no notes were actually in existence, because no statements were made by petitioner. The manifested violations under <u>Miranda</u> and <u>Brady</u> in this case, are helpful, in that, they establish the necessary misconduct to support petitioner's claim, which counsel failed to utilize effectively at trial.

An additional concern should have been with the numerous inconsistencies of the arresting agents and the persons present on the day of the interrogation. To add further injury to the obvious resulting prejudice of counsel's inaction, there was a stipulation by counsel, against the will of petitioner's, that kept from the trial jury the fraud and subsequent perjury conviction of one of the arresting agents, namely agent Joseph Finnegan. Agent Finnegan created circumstances and scenarios to benefit his personal interests, namely filing a phony insurance claim, and indicated on December 29, 1998, for perjury, perjury alleging motor vehicle theft, burning of a motor vehicle, burning to defraud insurer, and filing a fraudulent insurance claim. The original concern of this petition is whether the defendant had circumstances and evidence to support a reasonable inference of his actual innocence based upon police fabrication, and to deny him the right, against his clearly articulated will, was a denial of competent and professional representation by his counsel, Joseph

Bernard. When that is considered with the continued inconsistencies of agent Soto's testimony, a reasonable inference can be drawn that counsel could, and should have made an argument for exclusion of the confession on the grounds of inadmissible evidence opposed to the <u>Miranda</u> issue.

The issue must not become an inquiry into the strength of petitioner's intended defense. To do so would be a denial of the right of petitioner to present a defense that is not frivolous or incredible. More importantly the omissions and inactions of counsel gave the prosecution unobstructed latitude in developing a circumstantial conspiracy, especially when counsel failed to understand the legal significance of petitioner's factual claims from the inception and progress of this case. <u>Surpra v. Dubois</u>, 38 F.3d 1, 10 (1st Cir. 1984); Also <u>Young v. Zant</u>, 677 F.2d 792, 798 (11th Cir. 1982). Here we have both issues of duress and under influence, which would have warranted consideration by a concerned attorney of some type of defense that was aligned with those variables which exonerate his client. By failing to pursue such a defense, counsel forfeited the only reasonable defense in petitioner's best interest. See: <u>Fortenberry v. Haley</u>, 297 F.3d 1213, 1226-27 (11th Cir. 2002).

Although this honorable court is not bound to use, or even consider, the decisions of either circuits, the abundance of case law speaks with a singular voice on these issues; counsel had an obligation to both court and his client, its present the full range of available evidence so that the truth and completeness of this matter may be heard. In this case, that was not done and the issue of prejudice sits therein. See: <u>Poroco v. U.S.</u>, 784 F2d 38, 41 (1st Cir. 1986).

The essence of petitioner's argument is, or should be considered that, although counsel had latitude in drafting the most appropriate course of action, what standard of effectiveness or strategy justifies the alienation of the witnesses, the documentary evidence, the refusal to present an indicted

agent relative to this case, and the blatant inconsistencies found throughout these proceedings. All of that was ignored in favor of permitting the prosecution to present a singular uncorroborated confession, while waiving a defense that would have challenged the validity and reasonableness of the totality of these circumstances. Petitioner's counsel ignored crucial evidence, and this permitted the prosecution to present a singular uncorroborated confession. Thus, counsel deprived petitioner of a defense that would have challenged the validity and reasonableness of the totality of these circumstances.

All of the above constitutes, at minimum, a deviance of the professional standards of ethics which are required by the American Bar Association (ABA). These cumulative errors, at minimum, serve as the foundation for an inquiry into the overall effectiveness of counsel's representation, as they collectively failed to work the adversarial testing process and rendered the result of the trial fundamentally unfair and unreliable. See: ABA Standards 4-3.8 & 4-5.1; Lockhart v. Fretwell, 122 L.Ed. 2d 180, 113 S.Ct. 838, 842 (1993); Strickland, 466 U.S. at 688, 104 S.Ct. at 2065.

## CONCLUSION

The petitioner prays that this court may grant relief in the form of an evidentiary hearing to examine the prejudice of counsel's performance and omissions as outlined examined within this memorandum.

12

Respectfully submitted,

Rafael Fontanez, In Pro Se
Rn: 90455-038
Federal Correction Institution
P.O. Box 7000 West
Ft. Dix, New Jersey 08640

## CERTIFICATE OF SERVICE

I, Rafael Fontanez, do hereby affirm and attest that I have placed this Petition of section 2255 personally, via assistance, to the clerk of this court, and sent a copy to same to the office of the U.S. Attorney on this ___9___ day of January 2004, pursuant to 28 U.S.C. § 1746.

Rafael Fontanez, In Pro Se

13

**EXHIBIT A**

## SWORN AFFIDAVIT OF TRUTH

I, Anthony Bledsoe states that the truths contained hereinafter are true, correct, complete, certain, not misleading, to the best of my knowledge, in my capacity of unlimited commercial liability, having first hand personal knowledge and belief, competent to be a witness, knowing the penalty of perjury pursuant to the laws of these several states in Union, so help me God.

I, Anthony Bledsoe states: In commerce truth is sovereign. Therefore, this "Sworn Affidavit of Truth" will stand as truth in commerce if not rebutted.

Executing and staking of the lawful claim of Anthony Bledsoe, herein referenced as "Affiant," in accordance with this Sworn Affidavit of Truth.

Affiant freely admits that Ralphael Fontanez was not involved in any disturbution or conspiracy or had any association with affiant in the dealings of drugs on August 20, 1998, September 8, 1998, and October 6, 1998.

Anthony Bledsoe, affiant

J u r a t

State of Massachusetts    )
                          )
                          ) ss: Ayer
County of Middlesex       )

Subscribed and sworn to at Ayer before me this 11ᵗʰ day of May 2001.

Notary Public Carmen Alvidrez

My Commission Expires April 14, 2006

WITNESS my hand and official seal.


Carmen Alvidrez

**EXHIBIT B**

# AFFIDAVIT

I, Christy Torres, do swear to relate the following facts completely and truthfully, to the best of my ability, under the penalty of perjury.

I have known Rafael Fontanez since 1991. Since then we maintained a consensual relationship that produced two children. We have shared a mutual and personal friendship.

In December of 1998, I received a collect phone call from Rafael Fontanez who asked me to make a three-way call to Larry's home phone number, as a favor to Ice ( Anthony Bledsoe ). At that time Anthony took the phone and gave me the home phone number of his cousin, Larry. I called that number and Anthony spoke to someone who told him that Larry was not at home, he may be at the store.

At that time Anthony asked me to call Edwin. I dialed Edwin, on his cell phone, and Edwin joined in conversation with Anthony. I heard Anthony ask Edwin to go to the store because he had something important to discuss with Larry. Edwin said he was in his car and he would go get Larry.

A few minutes later Edwin said that he sees Larry and shortly passed him the cell phone. Larry came on the phone and said hello to Anthon. During the conversation I heard Anthony and Larry discuss different names and details of the case against Anthony, and others. My focus was heightened when Anthony told Larry, in response to a question about Rafael by Larry

> "Nothing should happen, he should be let free, because he has nothing
> to do with my sh__(expletive).This is my problem, he was just with
> me doing me a favor, giving me a ride, so he better be going home".

Shortly thereafter, the conversation between Anthony and Larry ended. At which this time Rafael came back on the phone and we had a short conversation. I contacted Joseph Bernard, prior to trial to relate these admissions and the possibility of their use at trial. At no time did Joseph Bernard discuss with me about the possibility of submitting an affidavit or my testimony at a trial. I swear that the above facts are truth and nothing but the truth.

Christy Torres

## JURAT

Sworn to before me that the facts herein are true, correct, complete, and not misleading to the best of her knowledge and understanding.

1

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 6TH DAY
OF Aug IN THE YEAR 2003

SEAL

Witness my hand and official seal:

Commission: _____

Notary: _____ Exp 12/27/2007

2

**EXHIBIT C**

AFFIDAVIT



I, Edwin Santana, do make the following statements of fact under the penalty of perjury, related to this matter as follows:

I have known Rafael Fontanez since, approximately 1991. Since that time we have maintained a mutual friendship and social acquaintances. In December 1998, while in my vehicle driving through Springfield, Massachusetts, I received a call on my cellular phone from Christy Torres. Christy is known to me as the former girlfriend of Rafael Fontanez.

Christy informed me that she had "Ice" (Anthony Bledsoe) on the phone and it was a three-way call. Anthony asked me to find his cousin whose name is Larry, because he needed to speak to him. I went to his place of business and told him that his cousin Anthony was on the phone and wanted to speak with him about something important.

I handed Larry the cellular phone so he could speak to his cousin Anthony. While I was standing next to Larry he asked his cousin, "… you said that Ralphy, Jet, cousin Larry are innocent, so why are they still in jail".

The conversation lasted approximately 10 minutes from the time I handed Larry the cellular phone, until he handed it back to me. At that time I asked Larry was everything alright, because I overheard him say, that Ralphy (Rafael Fontanez) was innocent, to which he replied, " that's what Anthony said".

I contacted Joseph Bernard, at his office to let him know that I was willing to relate these facts to the court by testimony or affidavit. At no time thereafter did counsel contact me relative to this legal matter. I make this statement of my own free will and state that above facts are true.

8-18-03

Edwin Santana

1

JURAT

Sworn to before me that the facts herein are true, correct, complete and not misleading to the best of his knowledge and understanding.

Witness my hand and official seal: *expires* 6/26/2009

SEAL

Commission: _____

Notary: *Carol B. Sullivan*

Subscribed to and sworn before me
this 5th day of *August* 2003
*Carol B. Sullivan*
CAROL B. SULLIVAN, Notary Public
My commission expires June 26, 2009

2

**EXHIBIT D**

# **AFFIDAVIT**



**In Re:** UNITED STATES V. RAFAEL FONTANEZ,
          Cr.  No:    98-30041-MAP

   I, Larry Finney, do swear that the making of this affidavit, is being done on my own free will, without any coercion on anyone's part and under the penalty of perjury, state the following facts.

   I have known Rafael Fontanez since 1998, as being the owner of Shear Perfections Barber Shop. A shop where I had regularly received haircuts, located in the Mason Square area, in Springfield, Massachusetts.

   In December of 1998, I received a call from my cousin Larry, who explained a conversation which took place between him and our other cousin Anthony Bledsoe. Larry stated that part of Anthony's conversation was in declaring the innocence of Rafael, someone else, and of myself from the charges of our individual cases.

   I forwarded the above facts, around December of 1999, to Rafael Fontanez personally, when we found ourselves living in the same housing unit in Ludlow House of Correction, as we were both awaiting trial. Due to the exculpatory nature of the above facts, I expressed my willingness to provide oral or written testimony of these facts. At no time, after this occurrence, did I ever receive contact from Rafael Fontanez's attorney in regards to this matter.

                                 Respectfully submitted,

                                 *Larry D. Finney*
                                 Larry Finney

                        JURAT

   Sworn to before me that the facts herein are true, correct, complete and not misleading to the best of his knowledge and understanding.

                        Witness my hand and official seal:

        SEAL

                        Commission:  1-13-2006

                        Notary:  _____

                                          ANGEL COTTO
                                          Notary Public
                                       My Commission Expires
                                          January 13, 2006