UNITED STATES DISTRICT COURT
DISTRICT COURT OF MASSACHUSETTS

UNITED STATES )
)
v. ) Case No.: 04-CO-30007-MAP
)
RAFAEL FONTANEZ )

MOTION FOR LEAVE TO AMEND MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE BY A PERSON
IN FEDERAL CUSTODY

28 USC § 2255

---

MOTION FOR LEAVE TO AMEND
PURSUANT TO RULE 15(a)
of FED.R. OF CIV.P.

---

Petitioner, for good cause, amends by submitting an additional claim of an "ACTUAL CONFLICT OF INTEREST", as a ground to support petitioner's denial of effective assistance of counsel. Due to a misunderstanding of applicable case law, of the now advanced claim, i.e. applying only to attorneys who represented multiple defendants, petitioner under this erroneous understanding did not want to initially present a meritless argument, but presently feels is riped for presentation. As of this point, the government has not responded to petitioner's initial claims and a court order, issued on February 12, 2004, granted the government's "MOTION TO CONTINUE" to file its response until March 9, 2004.

For the aforementioned reasons, petitioner feels that it is in the interest of justice to present his additional pleadings, and in fairness to the proceedings the government should be allowed the necessary time to appropriately

1

respond.

## I. CONFLICT OF INTEREST CLAIM

In assessing the totality of circumstances surrounding the reasonableness of counsel's challenged actions or omissions, this honorable court is asked, for purposes of accurately developing the record, to consider that, post-trial petitioner learned of counsel's active personal and working relationships with both Agent Richard Soto and Agent Joseph Finnegan (agents who were actively involved in petitioner's case) prior to and during the commencement of this action, and that counsel, based upon this relationship, was laboring under an actual conflict of interest, which adversely effected counsel's performance throughout the proceedings.  See: Cuyler v. Sullivan, 446 U.S. at 350.

### A. GENERAL FACTS SUROUNDING COUNSEL'S RELATIONSHIP WITH AGENTS

In essence, according to Mr. Bernard, the gist of their personal and working relations originated and futher developed upon two relevant factors; 1) Both of these agents worked closely with Mr. Bernard in seeking criminal convictions, when Mr. Bernard was a prosecuting attorney in the SPRINGFIELD DISTRICT COURT; and 2) After going into private practice their relationship remained on more personal level outside of their professions.

In summary, Mr. Bernard regularly saw agent Soto in public and that despite the discharge of agent Finnegan from the SPRINGFIELD NARCOTICS DEPARTMENT, for being convicted for filing perjured insurance claims, Mr. Bernard continued their relationship by visiting agent Finnegan at his new place of employment, i.e Sport Bar.  For a more detailed and specific account, as to the nature

2

and extent of their personal and working relationship, please see, "Petitioner's attached AFFIDAVIT".

B.  ALTERNATIVE DEFENSE STRATEGY

In drug conspiracy cases, like this case, it has been long standing precedent in this Circuit that, the government is allowed to prove the element of "INTENT TO AGREE" by circumstantial evidence. See: U.S. v. Flaherty, 668 F.2d 566, 580 (1st Cir. 1981). The government in order to rebut the presumption, that "MERE PROXIMITY TO THE CRIME IS NOT ENOUGH TO PROVE GUILT", introduced into evidence an unquestionable prejudicial post-arrest statement allegedly made by petitioner. One where provides admissions of a knowing participation in the conspiracy, thus establishing, as a matter of law, that petitioner's presence was a functioning part to accomplish its objectives. See: U.S. v. Soto, 716 F.2d 989, 992 (1st Cir. 1983). Against petitioner's opposition, counsel decided to rely solely upon his perceived weakness of, and underappreciated the strength of, the prosecution's case, despite the evident damaging import of this evidence and the existence of highly risky precedent, if left undistinguished. See: Currier v. U.S., 160 F.Supp.2d 159, 166 (D.Mass 2001).

Petitioner, throughout this action, practically coughed up a lung in his efforts to voice the agent's deliberate fabrication of this evidence. The record, in this case, is completely deprived as to any presentation or introduction of an affirmative defense of police fabrication, in harmony with petitioner's factual claims, to effectively disprove the government's contention of the existence or authenticity of this evidence. Currier, 160 F.Supp.2d at 164. At best, the record reflects an unrebutted making of this statement and a knowing partcipation theory advanced by the government. Admittingly, counsel conceded that

3

this evidence was fabricated. See: AFFIDAVIT, Point 3(b). Yet at trial, counsel fully accepted the government's theory and under his reasoning piggy back of its presumed weakness, despite substantial exculpatory evidence at counsel's disposal to seek both affirmative defenses of actual innocence and of police fabrication, in order to bring forth the life of an adverserial testing process. Strickland, 466 U.S. at 697. These alternative defenses are neither incredible, frivolous nor some off the cuff attenuated hypothesis, when considering that, the blatant internal inconsistencies of the government's documents, agent's testimony and the direct exculpatory nature of the unintroduced evidence, dresses up these defenses with the sheath of merit and worthy of their elaboration. See: Tejada v. Dubois, 142 F.3d 18, 25 (1st Cir. 1998).

C. ADVERSE EFFECT UPON COUNSEL'S PERFORMANCE

Based upon first-hand personal knowledge of counsel's personal and working relationship with these agents, petitioner can reasonably conclude, as the most casual mind would, that counsel, throughout the proceedings, was wrestling with and under the representative choke-hold of a divided loyalty between petitioner and these agents. See: U.S. v. Rogers, 209 F.3d 139, 146 (2nd Cir. 2000). An officer of the court, who may have professional relationships with other officers of the court, is one thing. But an officer of the court, who intimately has a personal and working relationship with and cares for the well-being of a convicted felon, one being an agent involved in this case, is another. The nexus between counsel's relationship and its adverse effect upon his performance, can be confidently established at the Suppression Hearing, when counsel conceded with the prosecution that a statement was in existence, but argued that it was taken in violation of petitioner's Miranda rights. The court's factual findings, at the Suppression Hearing, further support petitioner's claim, when it said,

4

in part,

> "...The real dispute in this case relates <u>primarily</u> to whether the defendant says what the government says he said, no to the <u>Miranda</u> issue." (Emphasis Added). See: Petitioner's Brief, Page 8.

The central focus should have been on the officers' conduct, one where they would seek a conviction by any means necessary, even if it meant fabricating the means to obtain it. The record is silent, both at the Suppression Hearing and at trial, as to counsel's cross-examining any of these agents along the lines of this alternative defense, but the record barks out counsel's stipulation of not placing agent Finnegan upon the stand. See: <u>Trigones v. Hall</u>, 115 F.Supp. 2d 158, 169 (D.Mass. 2000). Counsel through legal experience chaperon petitioner by the hand at trial, in order to tango with an objected "WEAKNESS THEORY", while simultaneously tap-dancing all over an effective alternative defense that would have made this case dance to a different tune. See: <u>U.S. v. Rodriguez-Rodriguez</u>, 929 F.2d 747 (1st Cir. 1991). As shown, the affinity of this relationship, surely had an adverse effect on counsel's performance, by deliberately disregarding the aforementioned defense, and thereby, correlatively adopting, on all fours, the prosecution's theory of conspiracy without an earnest effort to distinguish it.

Counsel, being an officer of the court, had a professional obligation, not only to avoid conflicts of interests, but to appraise the petitioner and the court of his personal and working relationship with these agents. <u>Strickland</u>, 466 U.S. at 689. The scope of this relationship, as illustrated above, provides sufficient indicia to reasonably infer that counsel's decision, to turn his back on raising, preparing, and/or presenting an affirmative defense of police fabrication, was one devoid of sound trial strategy. See: <u>Bosch</u>, 584 F.2d at 1122 (1st Cir. 1978).

5

CONCLUSION

Therefore, petitioner request that this honorable court consider the aforementioned circumstances to determine, at an Evidentiary Hearing, whether counsel had a legal duty to inform both the petitioner and the court of his personal and working relationship with these agents during the proceedings, and more importantly, whether he was laboring under an actual conflict of interest. One where, inter alia, could have played a significant role in counsel's decision to foreclose petitioner's most tantamount defense of police fabrication, if not actual innocence, to meet the prosecution's case. See: Brien v. U.S., 695 F.2d 10 (1st Cir. 1982). The resultant prejudice caused by the alienation of this affirmative defense of police fabrication, may lend sufficient basis for the court to determine that this particular defense my have been inherently and directly in conflict with counsel's other competing interests, i.e. Mr. Bernard's moral obligation to protect agent Soto's career and prevent agent Finnegan from undergoing further injury; and provide the rationale in establishing the existence of a reasonable probability, a probability sufficient to undermine confidence in the outcome and rendering its results fundamentally unfair and unreliable. Strickland, 466 U.S. at 697.

For the aforementioned reasons, petitioner prays that this honorable court grants petitioner an Evidentiary Hearing.

Respectfully submitted,

Rafael Fontanez, In Pro Se
Rn: 90455-038
Federal Correction Institution
P.O. Box 7000 West
Ft. Dix, New Jersey 08640

6

CERTIFICATE OF SERVICE

    I, Rafael Fontanez, do hereby affirm and attest that I have placed this "Motion For Leave To Amend" in the prison mail box pursuant to <u>Houston v. Lack</u>, 487 U.S. 266 (1988), and sent a copy of same to the office of the US Attorney on this 24th day of February of 2004, pursuant to 28 U.S.C. § 1746.

_____
Rafael Fontanez, In Pro Se