before Fontanez's trial, briefly cooperated with the government prior to Fontanez's trial. While cooperating, Bledsoe gave a proffer in which he told the government that Rafael Fontanez had been his supplier of crack cocaine. See Exhibit A (Affidavit of Assistant U.S. Attorney William M. Welch II). Indeed, as of January 5, 2000, defendant Fontanez and Attorney Bernard, in his capacity as standby counsel, received notice that co-defendant Bledsoe was implicating Fontanez. See e.g. Exhibit B (Computer copy of letter, dated January 5, 2000). Therefore, co-defendant Bledsoe would have implicated Fontanez in all of the transactions for which Fontanez had been charged if called as a witness.

The fact that co-defendant Bledsoe allegedly recanted his proffer statements in an affidavit dated May 11, 2001 does not help Fontanez's ineffective assistance claim. As stated above, as of January, 2000, co-defendant Bledsoe had implicated Fontanez in the crack cocaine conspiracy. Assuming arguendo that co-defendant Bledsoe had been called as a witness and recanted his proffer statements, the Government would have impeached co-defendant Bledsoe's testimony with his proffer statements implicating Fontanez as his supplier of crack cocaine. Although not offered for their truth, these impeached statements, coupled with the surveillance testimony, taped conversations, and the confession of Fontanez would have been devastating to Fontanez' case.

3. Calling Christy Torres as a witness would not have helped Fontanez's case. Torres's affidavit describes a conversation in December, 1998 in which she overheard co-defendant Bledsoe allegedly say to another person that Fontanez had nothing to do with his case. Torres' testimony would have been hearsay and inadmissible at trial. Fontanez has not identified any hearsay exception that would have permitted the admission of this conversation. Assuming arguendo that Attorney Bernard knew about this information, Attorney Bernard correctly concluded that this information was inadmissible, and therefore had no reason to contact Christy Torres as a witness.

4. Calling Edwin Santana as a witness would not have helped Fontanez's case. Santana's affidavit describes a conversation in December, 1998 in which he overheard a third person summarize the statements of co-defendant Bledsoe allegedly exculpating Fontanez had nothing to do with his case. Santana's testimony would have been double hearsay and inadmissible at trial. Fontanez has not identified any hearsay exception that would have permitted the admission of double hearsay at trial. admission of this conversation. Again assuming that Attorney Bernard knew about this information, Attorney Bernard correctly concluded that this information was inadmissible, and that Edwin Santana had no value as a witness.

5. Calling Larry Finney as a witness would not have

helped Fontanez's case. Finney's affidavit describes a conversation in December, 1998 in which his cousin "Larry" told him about a conversation that cousin "Larry" had with co-defendant Bledsoe in which co-defendant Bledsoe allegedly exculpated Fontanez. Finney's testimony would have been double hearsay and inadmissible at trial. Fontanez has not identified any hearsay exception that would have permitted the admission of double hearsay at trial. Assuming that Attorney Bernard knew about this information, Attorney Bernard correctly concluded that this information was inadmissible, and that Larry Finney had no value as a witness.

6. Putting into evidence the business permit of "Shearz Perfection" would not have assisted Fontanez's case. As a preliminary matter, Attorney Bernard put forth the defense that Fontanez wanted -- that Fontanez was a legitimate businessman who unknowingly gave co-defendant Bledsoe rides in his automobile to deliver crack cocaine. Attorney Bernard called Fontanez as a witness, and Fontanez testified that he was a legitimate businessman who was a partner in a business called "Shearz Perfection." Fontanez also testified that he did promotional work for concerts and similar events. Fontanez acknowledged giving co-defendant Bledsoe rides in his automobile, but testified that he had no knowledge that co-defendant Bledsoe was delivering crack cocaine.

Furthermore, contrary to Fontanez's claim that Attorney Bernard refused to make use of the defendant's documents regarding his hair cutting business and day planners, Fontanez testified at length during cross-examination regarding these documents. In fact, some of those documents, such as his day planners, were admitted during the course of the trial.

Attorney Bernard also called Fontanez's business partner in Shearz Perfection as a witness. Fontanez's business partner confirmed that Fontanez was a legitimate businessman, and that Fontanez handled the marketing aspects of their business. Therefore, given the testimony of Fontanez and his business partner, the admission of a business permit would not have added much to Fontanez' defense.

7. Fontanez concludes his § 2255 claim by arguing that Attorney Bernard was ineffective at his suppression hearing. Fontanez points to the numerous inconsistencies between the testimony of Task Force Agents (hereinfater "TFA") Soto and Jusino as evidence that the police fabricated his confession, and argues that Attorney Bernard should have presented such a defense at trial.

However, Fontanez's claim must fail on this point because the numerous inconsistencies between the testimony of TFAs Soto and Jusino prove that Attorney Bernard was effective. Attorney Bernard elicited the inconsistences at the suppression hearing

18

and at trial through effective cross-examination. Attorney Bernard brought to the court's attention at the suppression hearing and the jury's attention at trial that TFA Soto had destroyed his rough notes. Fontanez testified that he never made the statements attributed to him in the confession. Therefore, Attorney Bernard made all of these facts known to the court at the suppression hearing and the jury at trial, allowing each to draw the inference of police misconduct or fabrication.

Fontanez seems to complain that Attorney Bernard did not try to admit the fact that former TFA Finnegan had been indicted for perjury and insurance fraud on December 29, 1998. Fontanez apparently hoped to bootstrap this conduct into affirmative evidence of police misconduct surrounding his confession.

However, the indictment of former TFA Finnegan would have been inadmissible. Given the lack of any nexus between his indictment and Fontanez's confession, the mere fact that TFA Finnegan had been indicted simply would not have been admitted as affirmative evidence of police misconduct. TFA Finnegan also was not a witness at the suppression hearing or the trial. As a result, his credibility was not at issue.

V. <u>Conclusion</u>

For the reason set forth above, the defendant's motion to vacate, set aside or correct his sentence should be denied.

19

Respectfully submitted,

MICHAEL J. SULLIVAN
UNITED STATES ATTORNEY

by: /s/ William M. Welch
WILLIAM M. WELCH, II
TODD E. NEWHOUSE
Assistant U.S. Attorneys


CERTIFICATE OF SERVICE

Hampden, ss.                          Springfield, Massachusetts
                                      March 2, 2004

   I, Todd E. Newhouse, Assistant U.S. Attorney, do hereby certify that I have served, by first class mail, a copy of the foregoing, to Rafael Fontanez, pro-se, Reg. No. 90455-038, FCI Fort Dix, P.O. Box 7000 West, Ft. Dix, New Jersey 08640..

/s/ Todd E. Newhouse
TODD E. NEWHOUSE
Assistant U.S. Attorney

20

## AFFIDAVIT OF WILLIAM M. WELCH II

I, William M. Welch II, being duly sworn, state as follows:

1.  I am an Assistant United States Attorney assigned to the Springfield office of the U.S. Attorney's Office and have been so assigned since April, 1995. I was trial counsel in <u>United States v. Rafael Fontanez</u>.

2.  In December, 1999, I was present during several interviews with Anthony Bledsoe. These interviews were conducted under a "proffer" type arrangement. During those interviews, Bledsoe consistently incriminated Fontanez. Bledsoe identified Fontanez as his source of supply for the crack cocaine and acknowledged that Fontanez had supplied him with the crack cocaine delivered to the undercover agent for each one of the transactions in which Fontanez had been charged.

3.  Ultimately, I rejected Bledsoe's offer at cooperation. The main reason was because Bledsoe did not offer any significant additional information about his own involvement or the involvement of others in drug distribution beyond the charges contained in the indictment. Bledsoe essentially told us what we already knew.

_____
WILLIAM M. WELCH
Assistant United States Attorney


GOVERNMENT EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (413) 785-0235*  
*Courthouse*  
*Fax (413) 785-0394*

*Federal Building and*  
*1550 Main Street, Room 310*  
*Springfield, Massachusetts 01103*

January 5, 2000

Rafael Fontanez
Hampden County Jail
627 Randall Road
Ludlow, MA 01056

Joseph D. Bernard, Esq.
73 State Street
Springfield, MA  01103

Thomas J. Rooke, Esq.
73 Chestnut Street
Springfield, MA  01103

    Re: **United States v. Rafael Fontanez, et al.**

Dear Counsel:

    Please be advised that Anthony Bledsoe will not be a witness in the above-captioned case and is not cooperating with the Government.

    In addition, during a proffer, Mr. Bledsoe stated the following:  on August 7, 1998, he returned to his apartment after having sold the Big-8 to S/A Finning.  Bledsoe exited his car and walked over to the tan Explorer.  Fontanez and Quinones were standing next to the Explorer.  Bledsoe stated to Fontanez that he had the money, and that he was going to put the money in the tan Explorer.  Bledsoe reached into the tan Explorer and put the cash in the center console.  Fontanez walked around the Explorer, entered the passenger side, and removed the cash.  Fontanez walked around the Explorer and gave Bledsoe $400.  Quinones stated that he had to leave, and Bledsoe shook his hand. Quinones departed by himself in the Explorer.

    Finally, you have until 5:00 p.m. to accept either the



GOVERNMENT EXHIBIT B

package plea offer or any individual plea offers that may have been extended. Once again, these plea offers are preliminary, and must be approved by the Boston office.

>Very truly yours,
>
>DONALD K. STERN
>United States Attorney
>
>By: _____
>WILLIAM M. WELCH II
>Assistant United States Attorney

enc.