UNITED STATES DISTRICT COURT
DISTRICT COURT OF MASSACHUSETTS

FILED
 CLERK'S OFFICE

2004 MAR 15  A II: 19

U.S. DISTRICT COURT
DISTRICT OF MASS

UNITED STATES    )
                 )
     v.          )    Case No.: 04-CO-30007-MAP
                 )
RAFAEL FONTANEZ  )

PETITIONER'S REPLY TO GOVERNMENT'S RESPONSE TO PETITIONER'S
§ 2255 MOTION TO VACATE, SET ASIDE OR CORRECT HIS SENTENCE

    The petitioner, in pro se, submits this memorandum in reply to the government's response to petitioner's § 2255 Motion and Memorandum.

I.  GOVERNMENT'S NON-RESPONSE TO COUNSEL REPRESENTING AN ACTUAL CONFLICT OF INTEREST.

    On February 24, 2004, petitioner submitted and placed in the prison mail box, pursuant to Houston v. Lack, 487 US 266 (1988), petitioner's MOTION FOR LEAVE TO AMEND.  Petitioner, for good cause, amended the § 2255 memorandum by submitting an additional claim of an "ACTUAL CONFLICT OF INTEREST", as a ground to support petitioner's denial of effective assistance of counsel. Petitioner's Motion was timely submitted and prior to the date the government submitted their response to petitioner's claims.  The government's response is post-marked on March 2, 2004, and it was received by petitioner on March 9, 2004 via institutional mail.

    Upon inspection, the government has not filed a response to petitoner's amended claim.  Petitioner request that the court either, 1) order the government to respond to this claim, or 2) to accept their silence as admitting the truth of the facts contained therein, and grant petitioner an Evidentiary Hearing.

II. REPLY TO THE GOVERNMENT'S ALLEGATION THAT "FONTANEZ'S § 2255 CLAIMS HAVE EITHER BEEN PREVIOUSLY DECIDED OR WAIVED".

    On page 11 of government's response, hereafter called "RESPONSE", the

1

government attempts to persuade the court that petitioner, in his § 2255 claims, is rearguing or rechallenging "THE SUFFICIENCY OF THE EVIDENCE OF HIS (Petitioner) PARTICIPATION IN THE DRUG OFFENSES AS WELL AS THE DENIAL OF HIS MOTION TO SUPPRESS HIS POST-MIRANDA-STATEMENTS". Also, that these claims have been previously decided and the First Circuit affirmed petitioner's conviction, and that petitioner is precluded from relitigating these issues. Additionally, the government contends that in order for petitioner to relitigate them, petitioner should be subjected to "cause and prejudice" standard as determined in U.S. v. Frady, 456 US 152, 170 (1982), to overcome, according to the government, the aforementioned defaulted claims. [Gov.Res., P. 11 & 12].

The government's misunderstanding of petitioner's actual claims, most have been the reason for the government to state their self-serving version of the facts presented at both the suppression hearing and the trial. [Gov.Res., P. 3-13]. Petitioner does not join-issue as the government's claim is clearly premised upon a misunderstanding of petitioner's actual claims. Petitioner's claim is based upon a violation of the 6th Amendment right to effective assistance of counsel, not a challenge to any of the trier's factual findings. Any mention of counsel's involvement during the proceedings are solely presented, 1) prevailing circumstances surrounding the challenged deficient performance of counsel; and 2) that these errors prejudiced the substantial rights of petitioner, and that they provide a reasonable probability, a probability, but for these errors, the outcome of the proceedings would have been different. Thus, petitioner's claims of ineffective assistance of counsel are procedurally cognizable under a § 2255 collateral proceeding. U.S. v. Genao, 281 F.3d 305, 313 (1sr Cir. 2002).

III. REPLY TO THE GOVERNMENT'S CLAIM THAT "FONTANEZ'S ATTORNEY WAS NOT INEFFECTIVE".

As a constitutional right, petitioner asserted his actual innocence to the government's indictment and all of its claims. Petitioner made his position

2

adamantly clear to counsel to go forward with a trial, and be given the opportunity to be heard in his defense. Chambers v. Mississippi, 410 US 284, 294 (1973). In Scarpa v. Dubois, the court held, "counsel in a criminal case should understand the elements of the offenses with which his client is charged and should display some appreciation of the recognized defenses thereto." Id. 38 F.3d at·10 (1st Cir. 1994). In this case, the recognized defense(s) to the government's charges was actual innocence, and to the introduction of the confession into evidence was police fabrication. [Motion for Leave to Amend, P. 3] (Hereafter called "Pet.Mot."). With the latter defense, counsel refused to ascertain its validity, despite the quantity of internal inconsistencies in the agent's testimony and the government's documents, spelling out fabrication. And with the former defense, counsel did not conduct even a minimal investigation to secure it, despite being given sufficient exculpatory leads. [Petitioner's Memorandum, P. 3] (Hereafter called "Pet.Mem.").

The government contends that, "Attorney Bernard put forth the defense that Fontanez wanted", and that it finds reasonable counsel's decision to have petitioner as his only source to introduce factual innocence at trial. [Gov.Res., P. 17]. Contrary to what the government may want the court to believe, the only viable defense against the confession, as a matter of law and supported by record evidence, was police fabrication. Tejada v. Dubois, 142 F.3d 18 (1st Cir. 1998). Additionally, the government states that, "Fontanez'a claim must fail on this point because the numerous inconsistencies between the testimony of TFA's Soto and Jusino prove that Attorney Bernard was effective." [Gov.Res., P. 18]. Petitioner reiterates that, "The record, in this case, is completely deprived as to any presentation or introduction of an affirmative defense of police fabrication, in harmony with petitioner's factual claims..." and "...as to counsel's cross-examining any of these agents along the lines of this affirmative defense

3

...." [Pet.Mot., P. 3 & 5].

In fact, counsel's stance on police fabrication was elucidated in the presence of the jury, when he stated in his closing arguments, "My remarks aren't to disrespect the police, because this is not about you judging the police. Its you judging the facts and circumstances that are coming into this case and to judge Mr. Fontanez. That's what this is all about." [Tr. Vol. VII, P. 1083]. Thereby, destroying the government's contention that Mr. Bernard, "allowed each (juror) to draw the inference of police misconduct or fabrication." [Gov.Res., P.19]. The government concedes that there were "numerous inconsistencies" and that this "prove that Attorney Bernard was effective". Petitioner dissimilarly exacts the same sentiments, and that counsel's decision to completely disregard this particular defense is subjected to scrunity and inquiry at an evidentiary hearing to determine whether it was an informed professional judgment. Lema v. U.S., 887 F.2d at 55 (1st Cir. 1993).

A.  FAILURE TO INVESTIGATE

Counsel in asking the jury to judge petitioner has to explain, at an evidentiary hearing, his reasons for not preparing and presenting any evidence at all in support of a viable claim of police fabrication, his reasons for not conducting an investigation into the exculpatory leads, and for not researching and introducing independent evidence of petitioner's factual innocence. Currier v. U.S., 160 F.Sup.2d 159, 164 (D.Mass. 2001).

Counsel's decision to alienate this defense, could not have been made from a well-informed choice, when considering the record evidence begs for its introduction, and does not entail significant costs in terms of counsel's strategy in relying on the weakness of the prosecution's case. Lord v. Wood, 184 F.3d

4

1083, 1095 (9th Cir. 1999). It seems evident that counsel's personal and working relationship with both agent Soto and Finnegan, played a significant factor in his decision to foreclose this particular defense. During the pre-trial stages, counsel expressed his attitude towards this defense and stated that this defense has no legal significance, despite petitioner's attempts to show supporting case law. [Exhibit A].

Counsel's uncomprimising position, inter alia, left petitioner with no choice but to terminate his representation on December 15, 1999. During the first day of trial on January 10, 2000, Mr. Bernard as stand-by counsel was fully aware of petitioner's intention of informing the court that, petitioner sought to present a defense of police fabrication and cross-examine the government's witnesses along the lines of fabrication of the confession. Counsel refused to allow its presentation under the auspices of the negative impact it would have upon the jury if presented by petitioner personally, but promised that he would introduce it, if permitted to resume his representation of petitioner. As established, counsel did none of the above, thus petitioner's reasons for stating, "Counsel through legal experience chaperon petitioner by the hand at trial, in order to tango with an objected "WEAKNESS THEORY" ...." [Pet.Mot., P. 5].

The prevalent internal inconsistencies of the agent's testimony, the questionable existence or non-exixtence of agent Soto's notes, and their destruction, agent Soto's uncorroborated allegation of the making of the confession by petitioner, the inconsistent preparation date of the confession with other government documents, and the agents continued questioning, despite petitioner's unequivocal request to speak with counsel five (5) different times should not have come to counsel as a surprise. The aforementioned evidence was within counsel's fingertips prior to both the suppression hearing and the trial, and counsel's decision

to disregard an affirmative defense of police fabrication, in conjuction with petitioner's factual claims from the inception of this case, was one deviod of sound trial strategy. Bosch, 584 F.2d at 1122 (1st Cir. 1978).

Throughout the proceeding counsel could not have made an informed decision about what defense to offer and whether to present witnesses, without first conducting an investigation ascertaining the content, veracity, articulateness, demeanor-factors, actual benefit or harm of the witnesses' story, and their willingness to testify. Trigones v. Hall, 115 F.Supp.2d 158, 169 (D.Mass. 2000). In this case, counsel was given the contents of Anthony Bledsoe's out-of-court confession exonerating petitioner, and also, the names of the corrobarating witnesses to Mr. Bledsoe's confession. The confession occurred during a conversation Mr. Bledsoe had with his cousin, Larry Lewis, over a three-way recorded telephone call made at the Franklin County Jail in Greenfield, Massachusetss. Also, during this conversation Christy Torres, being a party involved in the call, over heard Mr. Bledsoe exonerate petitioner. For a more detailed account of Mr. Bledsoe's confession, please refer to the witnesses' affidavits.

Under the Federal Rules of Evidence, Rule 804(b)(3), Mr. Bledsoe's confession would have been admissible as evidence, because they are declarations against Mr. Bledsoe's penal interests. Mississippi, 410 US at 299. The quality of this evidence was significant enough to have motivated counsel to investigate and seek from the correctional facility a copy of this taped conversation. Sanders v. Ratelle, 21 F.3d 1446, 1454. Its importance lied at acquiring independent evidence of petitioner's factual innocence, corroborating evidence to support the available corroborating witnesses' testimony of Mr. Bledsoe's confession, and as impeachment evidence in case, as the government contends, Mr. Bledsoe would have recanted and implicated petitioner at trial. [Gov.Res., P. 15].

B. WHAT AN ADEQUATE INVESTIGATION COULD HAVE REVEALED.

An investigation into the corroborating witnesses could have revealed, based upon the information given, that many had first-hand personal knowledge of Mr. Bledsoe's confession, were consistent as to Mr. Bledsoe's exoneration of petitioner from the government's charges, and that two of the witnesses were of Mr. Bledsoe's family. U.S. v. Tajendine, 945 F.2d 458, 466 (1st Cir. 1991). In particular, counsel could have obtained, just from Larry Finney (Bledsoe's cousin), independent evidence of petitioner's factual innocence. Mr. Finney's testimony could have bostered petitioner's credibility, and served as corroborating evidence at trial. Mr. Finney, in essence, could have stated, "Me knowing Anthony Bledsoe, always asking for rides because he does not have a car of his own, and depend on others for rides for his sole transportation. I also gave my "cousin" Anthony Bledsoe a ride on July 8th 1998 to One-Stop-Package Store...", where, "... at some point in time he and his friend whom I never knew or met before, must of have know that something illegal was going on without my knowledge...."; "Anthony Bledsoe does have a habit of not telling the truth, and to his own family members, he never told me what was going on, on July 8th 1998." In addition, Mr. Finney could have provided the jury with other exculpatory information he had available for petitioner. [Exhibit B].

The fact that Mr. Finney is Mr. Bledsoe's cousin and was willing to testify in the petitioner's behalf, could have positively impacted the mind's of the jury and given them the necessary credence to believe petitioner's factual innocence. In addition, had counsel researched petitioner's business documents, counsel could have developed, in conjunction with Mr. Finney's testimony, a conclusive pattern of deliberate deception by Mr. Bledsoe. Counsel, through these documents, could have unearthed in the presence of the jury, Mr. Bledsoe's deliberate falsification

7

of his true identity, namely Anthony Lewis, when hired at petitioner's Barber Shop. Notwithstanding the aforementioned, counsel, upon inspection of these business documents, could have mounted an alibi defense as to petitioner's where-abouts on August 7, 1998, i.e. at petitioner's Baber Shop for its Grand Opening Day, and not bear the burden of justifying otherwise legal activity, if the government would have introduce into evidence Mr. Bledsoe's purported proffer for impeachment purposes at trial. U.S. v. Mora, 598 F.2d 682, 684 (1st Cir. 1979); [Gov.Res., P. 15].

Counsel's failure to conduct an investigation into the aforementioned leads, introduce into evidence, independent information outside of the government's evidence that illustrated petitioner's factual innocence, and present an affirmative defense of police fabrication to effectively meet the government's evidence against petitioner at trial, renders counsel's performance deficient and was sufficiently prejudicial to undermine confidence in the outcome of the trial, and rendered its result fundamentally unfair and unreliable. Wood, 184 F.3d at 1094; also Dubois, 142 F.3d at 25.

CONCLUSION

Therefore, petitioner requests this honorable court to consider the aforementioned facts and circumstances surrounding counsel's challenged actions, and to determine, at an evidentiary hearing, 1) whether counsel's decision, not to conduct an investigation into the exculpatory leads, was a reasonable well-informed professional judgment, Wiggins v. Smith, 156 L.Ed.2d 471, 485 (2003); 2) whether counsel's decision, to disregard an affirmative defense of police fabrication, in light of its insignificant costs in terms of counsel's reliance on the weakness of the prosecution's case, was a reasonable sound trial strategy, Bosch, F.2d at 1122 (1st Cir. 1978); 3) whether counsel was laboring under an actual conflict

of interest which adversely affected his performance throughout the proceedings, Cuyler v. Sullivan, 446 US at 350; and 4) whether collectively the aforementioned facts and circumstances surrounding counsel's challenge conduct, provide the necessary rationale in establishing the existence of a reasonable probability sufficient to undermine confidence in the outcome of the proceedings, Strickland, 466 Us at 697.

Petitioner feels that, petitioner has met the burden of demonstrating counse's ineffectiveness by a preponderance of the evidence, and prays that this honorable court grant petitioner an evidentiary hearing.

Respectfully submitted,

_____
Rafael Fontanez, In Pro Se

CERTIFICATE OF SERVICE

I, Rafael Fontanez, do hereby affirm and attest that I have placed the foregoing in the prison mail box pursuant to houston v. Lack, 487 US 266 (1988), and sent a copy of same to the office of the US Attorney on this 11th date of March of 2004, pursuant to 28 U.S.C. § 1746.

_____
Rafael Fontanez, In Pro Se

**EXHIBIT A**

Case 3:04-cv-30007-MAP    Document 11    Filed 03/15/2004    Page 10 of 14

AFFIDAVIT IN SUPPORT OF PETITIONER'S
REPLY TO GOVERNMENT'S RESPONSE

Now comes, the affiant and attest that the statements of facts are true, correct, and complete to the best of my knowledge. The affiant states the following:

1). THAT, in preparation for affiant's trial, on or about November of 1999, Mr. Bernard visited petitioner during the afternoon hours, while incarcerated at the Donald W.D. Wyatt, Federal Detention Center in Rhode Island.

2). THAT, during this visit affiant shared, in part, his certainty in pursuing a defense on police fabrication at trial.

3). THAT, in response Mr. Bernard stated, "Logically it makes alot of sense, but legally is insignificant", despite affiant's attempt to show supporting case law.

4). THAT, in disbelief affiant stated, "But this is what this is all about, this is what I have been telling you all along. The government's documents and the agent's testimony at the suppression hearing support it."

5). THAT, in agitation Mr. Bernard responded, " Is just legally insignificant."

6). THAT, after hearing Mr. Bernard's response and speaking about oher legal matters, affiant told Mr. Bernard that affiant no longer felt that Mr. Bernard had affiant's best interest and terminated Mr. bernard's representation of affiant.

Respectfully submitted,

*Rafael Fontanez* (signature)

I, Rafael Fontanez, hereby certify under the penalties of perjury of the laws of the United States that the above facts are true and correct to the best of my knowledge, pursuant to 28 U.S.C. § 1746.

This 11th day of March of 2004.

**EXHIBIT B**

Case 3:04-cv-30007-MAP    Document 11    Filed 03/15/2004    Page 12 of 14

11-14-00

Re: UNITED STATES vs. RAFAEL FONTANEZ

I Larry Finney state, this being done on my own free will, without any coercion on anyone part.

I Larry Finney, Anthony Bledsoe Blood cousin, my father is his mother sister.

Me knowing Anthony Bledsoe, always asking for rides because he does not have a car of his own, and depend on others for rides for his sole transportation. I also gave my "cousin" Anthony Bledsoe a ride on July 8th 1998 to ONE-STOP-PACKAGE STORE which is located on STATE ST.

My sole purpose for giving him a ride was to buy beer, which he drinks everyday, and nothing more than just a ride.

At some point in time he and his friend whom i never knew or met before, must of have know that something illegal was going on without my knowledge, but at some point in time while I'm talking to a third party, Anthony B. and his friend mention something about "5 grams".

To my knowledge that had something to do with something illegal, i never seen any transtactions made or any money being passed, but three months later i was arrested for Conspiracy with intent to distribute and aiding and abetting.

Almost 2yrs later my charges were dropped & i was given a charge of Misprison of a felony, which means, Not reporting a crime in progress and not telling the law offical.

I was facing a Sentenced of 30 to life but my Indictment was dropped and i recieved 27 months for Misprison of a felony.

Anthony Bledsoe does have a habit of not telling the truth, and to his own family members, he never told me what was going on, on July 8th 1998.

I know Mr. Fontanez, we live in the same Unit in Ludlow, i also know him from Mason Square Area from getting hair cutts from Barber shop he was a part of, i was the Manager of Mason Square Restaurant located Right Next door to Mr. Fontanez Barber shop.

At some point in time, i have exculportoey information for Mr. Fontanez when the time Comes.

I'm also willing to testify for Mr. Rafeal Fontanez when he needs me too.

Sincerly,

Mr. Larry D. King

MARIAN VAZQUEZ
Notary Public
My Commission Expires August 19, 2006

Marian Vazquez 11/16/00