UNITED STATES DISTRICT COURT
DISTRICT COURT OF MASSACHUSETTS

RAFAEL FONTANEZ ]
]
v. ]   Civil Action No.: 04-30007-MAP
]
UNITED STATES ]

---
**A P P L I C A T I O N   F O R   C E R T I F I C A T E
O F   A P P E A L A B I L I T Y ,   P U R S U A N T   T O
2 8   U . S . C .   §   2 2 5 3 ( c ) ( 1 )**
---

BY,
Rafael Fontanez, Petitioner
Rn: 90455-038
Federal Correction Facility
P.O. Box 7000 West
Ft. Dix, New Jersey 08640

MEMORANDUM IN SUPPORT FOR APPLICATION
FOR CERTIFICATE OF APPEALABILITY, Pursuant
to 28 U.S.C. § 2253(c)(1)

Comes now, Rafael Fontanez, in pro se, to submit this request in support of his Application for a Certificate of Appealability for review of the denial of his Motion under 28 U.S.C. § 2255 in this court.

## LEGAL STANDARDS

Pursuant to 28 USC § 2253(c)(1), petitioner may not appeal the final order of a district court dismissing his petition unless he first obtains a Certificate of Appealability(COA). Proulx v. Marshall, 190 F.Supp.2d 117 (D.Mass. 2001). The petitioner seeking a COA must show that (1) the issues are debatable among jurists of reason, (2) that a court could resolve the issues in a different manner, or (3) that the questions are "adequate to deserve encouragement to proceed further." Id. at 121.

A COA may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right. In ruling on a motion for a COA, a district court must state which issues, if any, satisfy the standard set forth in § 2253(c)(2) or the reasons for its denial of the motion. Loc.R. 22.1(a).

## STATEMENTS OF FACTS

On June 18, 2004, this Honorable Court entered its Order denying the application of the petitioner, to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. In order for the petitioner to appeal said Oder to the First Circuit Court of Appeals, the petitioner respectfully requests that this court issue a COA, pursuant to 28 U.S.C. § 2253, and Rule 22(b) of the Federal Rules of Appellate Procedure.

1

Petitioner states that contrary to the court's ruling, the evidence at trial against petitioner was not overwhelming. Yet, it was not so significantly weak to justify the absence from the jury, the existence of independent evidence of petitioner's innocence other than his naked testimony provided at trial. Although petitioner was observed and made admissions of driving his co-defendant Anthony Bledsoe to the near vicinity of at least three of the drug distributions, the admissions were conditioned upon petitioner's lack of knowledge of these distributions and they did not occur in the direct presence of petitioner. The most apparent reason(s) why the jury may not have found petitioner's testimony credible, was mainly due to counsel's inefforts to materialize or make manifest, in the presence of the jury, the existence of independent evidence of petitioner's innocence.

All communications setting up the drug transactions where made between co-defendant Anthony Bledsoe and U/C Greg Finning. Petitioner stipulates that there was two isolated occasions where it involved calls to both petitioner's cellular phone and to his business phone. The conversation while on petitioner's cellular phone, was made without his knowledge of Mr. Bledsoe's intended use to speak to a so-called buyer of drugs, despite the fact that it's contents never involved any discussions about drugs. The most distinguishing factors made through the use of petitioner's business phone, were his lack of knowledge of this conversation and Mr. Bledsoe's discription of two distinctive identities to the U/C, namely, one being Mr. Bledsoe's "man"/petitioner, who had no involvement with Mr. Bledsoe's deals with the U/C, and the other being the "Cuban", Mr. Bledsoe's source of supply.

In sum, these communications were argumentative for both the parties, its surrounding circumstances around petitioner were of equally legal activity, and

were absolutely not conclusive of petitioner's guilt. Concerning petitioner's credibility, the question should not have been determinative upon whether petitioner's disawals were credible in the minds of the jury. It should have been determined upon whether did petitioner have the fundamental right for his disawals to have been supported by the presentation of evidence establishing police fabrication of the confession and of his innocence, and its truth determined by the jury.

Therefore, the district court's ruling that petitioner's ineffectiveness claims have no basis is both legally and factually incorrect. Accordingly, petitioner maintains that he is entitled to redress on appeal on the following grounds, which substantially show that he was denied his constitutional rights:

### I. PETITIONER WAS DENIED HIS CONSTITUTIONAL 6th AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE

For numerous reasons and failures on the part of counsel, petitioner was denied his 6th Amendment right to effective assistance of counsel in the proceedings prior to this § 2255 motion. It is established in Strickland v. Washington, 466 US 668 (1984), that a criminal defendant cannot be legaly denied effective assistance of counsel in any important stage of the proceedings against him.

In overview, which is addressed in greater detail and extent in petitioner's § 2255 Motion below, counsel was ineffective for, but not limited to, the reasons following:

### A. FOR FAILURE TO INTERVIEW EXCULPATORY WITNESSES AND CONDUCT AN INVESTIGATION INTO BOTH THE FACTS AND LAW IN DETERMINING WHAT WAS THE BEST POSSIBLE DEFENSE.

Petitioner was denied effective assistance of counsel because he failed, under his professional obligations, to interview available exculpatory witnesses

3

to support petitioner's innocence. US v. Porter, 924 F.2d 395, 397 (1st Cir. 1991). Counsel did not conduct a reasonable investigation enabling him to make an informed decision about how these witnesses may or may not have benefited petitioner at trial. Wiggins v. Smith, 156 L.Ed.2d 471; Strickland, 466 US at 691. Counsel, within his perspective, had petitioner's un-comprimising right to go forward with a trial, his articulation of his innocence, and his claims of fabrication of evidence (confession) by the agents. Singleton v. US, 26 F.3d 233, 238 (1st Cir. 1994). Counsel's failure and complete disregard to conduct a minimum investigation into the exculpatory leads, evidencing petitioner's innocence, was unreasonable, unprofessional, and not within the confines of strategic decision-making. Sanders v. Ratelle, 21 F.3d 1446 (9th Cir. 1994).

An adequate investigation by counsel into the exculpatory witnesses would have revealed the existence of a recorded admission of petitioner's innocence made by co-defendant Anthony Bledsoe on or about December of 1998; just two months after petitioner's arrest, and that its making and full contents were personally witnessed over the phone by both Christy Torres and Mr. Bledsoe's cousin Larry Lewis. US v. Tajendive, 945 F.2d 458, 466 (1st Cir. 1991). An extension of this investigation would have revealed that, Edwin Santana, a participant in this conversation, could have verified that this admission was in fact made by Mr. Bledsoe to his cousin Larry Lewis, and that Larry Finney, Mr. Bledsoe's other cousin, could have verified the same and was willing to provide other available exculpatory evidence of petitioner's innocence. See: [§ 2255 Motion, Exhibits of Witnesses' Affidavits (A-D)]. Both of these witnesses' testimony would have been admissible under the corroboration rule of 804(b)(3), and under the "Residual Exception" of Rule 807(A), as the recorded admission of Mr. Bledsoe satisfies the cricumstantial guarantees of trustworthiness. Basically, the witnesses' potential testimony were material into petitioner's innocence and would have likely cause a different

result if presented to the jury. Benevete-Gomez v. US, 921 F.2d 378, 383 (1st Cir. 1990). For counsel not to have conducted an investigation into the exculpatory witnesses resulted in the loss of evidence and deprived petitioner of probably the strongest evidence, that counsel could have offered, of his innocence. Lord v. Wood, 184 F.3d 1083, 1094 (9th Cir. 1999).

It has been firmly recognized that counsel has a duty to its client to ensure a fair trial by gathering and presenting relevant and competent evidence for the jury's consideration bearing on the issues of petitioner's innocence. Blumenthal v. US, 332 US 539, 559-560. In this case, counsel never sought to get a verification of Mr. Bledsoe's confession from his cousin Larry Lewis or to Mr. Lewis' willigness to make a statement and provide testimony at trial. But most importantly, counsel never obtained a copy of Mr. Bledsoe's confession, recorded through his use of the monitored telephone system in the Franklin County Correctional Facility.

The significance to counsel's omissions, relates primarily to whether Mr. Bledsoe would have been available to testify to his admissions at trial, and not whether he should have been called. Sanders v. Ratelle, 21 F.3d 1446, 1454. Assuming arguendo that Mr. Bledsoe would have been available, then, the taped recorded cofession of Mr. Bledsoe would have been introduced to corroborate the truths of the matters asserted. Id. at 1459. If for whatever reason he would not been available, the taped recorded confession and its corroborating witnesses would have been introduced to establish in fact that the admission was made, and for attacking the credibility of Mr. Bledsoe under Rule 806 of the Federal Rules of Evidence, as if he testified as a witness at trial.

Under the exception to the hearsay rule 804(b)(3) for statements against penal interest, Mr. Bledsoe's out-of-court admissions would have been admissible. Id.

at 1458. Petitioner had a right to have the jury determine the weight of Mr. Bledsoe's admissions because the exception guards against the exclusion of exculpatory evidence away from the jury. Chambers v. Mississippi, 410 US 284, 302 (1973). The case that counsel presented on behalf of petitioner consisted of attacks on the credibility of the prosecution's witnesses, the reliability of it's physical evidence, and never presented no contrary physical proof of petitioner's innocence. Wood, 184 F.3d at 1094. In Currier v. US, the court held,

> "A lawyer who fails to adequately investigate, and to introduce into evidence, [information] that demonstrate[s] his client's factual innocence, or that raises sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance." 160 F.Supp.2d 159, 164 (D. Mass. 2001).

It cannot be said that having petitioner do all the ivestigative work and research into the facts and law to support his claim of police fabrication and of his innocence falls within the wide range of competent professional assistance. Petitioner at sentencing said,

> "...I HAVE to fight hard, diligently TO FIND evidence TO SUPPORT my claim, which I HAVE done prior to trial". [Sen.Trans., P. 57].

Attorney Jack Curtiss at sentencing verifies petitioner's own work:

> "With that in mind, Mr. Fontanez, who has done A LOT of his own work...."
> Id. at 14.

Counsel was under the legal obligation to inquire and investigate into both the facts and law of petitioner's true objectives, before determining that petitioner's best interests laid in presenting a weakness of the prosecution's case defense. [Tr. Trans. Vol. VII, P. 1097, 1107]. An extension to his obligation, includes the right of petitioner to have counsel investigate all meritorious information, facts, and evidence that would have served in mitigating the circumstances presented by the prosecution and to weigh its value in terms of making an informed choice among possible defenses. Scarpa v. Dubois, 38 F.3d 1, 10 (1st Cir. 1994).

6

There's no fair assurance that had the jury been presented with the evidence of petitioner's innocence, coupled with the facts and evidence establishing police fabrication of evidence against petitioner, it would have still convicted him. Failure of counsel to have interviewed the exculpatory witnesses and introduced evidence of petitioner's innocence to the jury, violated his 6th Amendment right to effective assistance of counsel. McMann v. Richardson, 397 US 759, 771 n.14.

### B. FOR FAILURE TO PRESENT THE ONLY VIABLE AND FORMIDABLE DEFENSE OF POLICE FABRICATION

The record reflects clearly that petitioner was denied effective assistance of counsel because counsel failed to raise, prepare, or present the only viable and formidable defense, namely, police fabrication in order for petitioner to effectively meet the prosecution's case. Currier v. US, 160 F.Supp.2d 159, 160 (D.Mass. 2001). Absent an explicit finding on the issue of police fabrication by the court tends to indicate that this defense was not raised. Id. at 164. Petitioner's affirmative defense was clearly articulated at sentencing when he stated,

> "I make a strong accusation that this is fabricated against me. I have to fight hard, diligently to find evidence to support my claim, which I have done prior to trial." [Sen.Trans., P. 57].

For counsel's failure to present this defense, petitioner expressed his dissatisfaction of counsel's representation at trial, when he said,

> "I'm going to have to put some blame on the counsel because it was available before trial...." Id. at 57.

It is well established trial practice that without a charge of fabrication against the government's witnesses made by counsel in the presence of the jury, may often amount to an imputation, by the jury, of inaccurate memory on the part of the government witnesses and not of outrageous misconduct manufacturing guilty. See: McCormick's Handbook on the Law of Evidence 2.ed, § 49. A misconduct illus-

7

trated by the agent's manufactured testimony of petitioner's alleged suspicious behavior surrounding the circumstances of the indicted transactions, for which counsel could have exploited to further support police fabrication. [Exhibit A].

During a side-bar conference subsequent to the cross-examination of Agent Richard Soto, counsel, in requesting for an inquiry to be made as to whether Mr. Soto's original notes of the confession could be located, failed to make the specific charge of fabrication as petitioner's defense. Counsel, however, by such actions left the record silent on this defense, when he said,

> "I realise that, but I would suggest to you that this is an extremely, if not central, issue pertaining to what Mr. Fontanez believes is very important...."

> "...He (Mr. Fontanez) is prepared to take the stand and claim that he never said what Mr. Soto said he said. And if nothing else, this is the thrust of the defense and I suggest I need these notes to continue the cross-examination". [Tr.Trans. Vol. IV, P. 509].

In contradistinction, after counsel demonstrated Mr. Soto's inconsistencies surrounding his alleged taking of notes of the purported confession of petitioner, led the court to conclude that the written and/or desruction of these notes was the "thrust or central issue" of petitioner's defense, when the court asked,

> "Why is it any different from any other inconsistency that a witness might have?"

> "MR. BERNARD: Simply because I need those written notes to cross-examine him on it because it is the central issue pertaining to this case".
> Id. at 512.

By not making it clear on the record that the thrust or central issue, i.e., the making of the confession, was based on police fabrication, made counsel's request unreasonable, under the then present circumstances, to seek remedy under Jencks and thereby justified the court's findings, when it said,

> "My own feeling is that the decision by Agent Soto not to preserve the notes probably did more good -- afforded more help to the defense than hindrance". [Tr.Trans. Vol. VI, P. 870].

8

As a result, counsel, with the numerous internal inconsistencies surrounding the making of the confession, undermined their significance to a mere inaccuracy of memory on the part of the government's witnesses in the presence of the court, when he based his Motion for a Mistrial or to Strike Testimony on a Jencks violation. [Tr.Trans. Vol. VI, P. 864]. The available charge of fabrication that could have been considered by the jury was obliterated, when at closing argument counsel stated,

> "My remarks aren't to disrespect the police, because this is not about you judging the police. It's you judging the facts and circumstances that are coming into this case and to judge Mr. Fontanez. That's what this is all about". [Tr.Trans. Vol. VIII, P. 1083].

Counsel did not display some appreciation to the legal significance behind the recognized defense of police fabrication which was truth-enhancing of petitioner's credibility, when he failed to qualify these facts and circumstances surrounding the making of the confession under it's import in the presence of the jury. As stated by petitioner at sentencing, "I would just like to emphasize that on the situation with the notes, it is more than that, it's just one piece of the puzzle...." [Sen.Trans., P. 56-57]. Based on the principles of pleadings prejudice is presumed, because counsel by seeking remedies under Miranda, Brady, and Jencks violations, conceded "that petitioner made a statement against self-interest and the existence of notes to support the statement...". Pleadings which went contrary to petitioner's claims against the making of the confession, "it being the fabricated product of the agents... and that no notes were actually in existence, because no statements were made by petitioner...". [§ 2255 Motion at P. 10].

The failure of counsel to bring these rudiments to the table, deprived petitioner of a fair opportunity to meet the prosecution's case and of his constitutional right to effective assistance of counsel. Strickland, 466 US at 685.

9

### C. FOR PRESENTING FALSE STATEMENTS OF MATERIAL FACTS AND LAW TO THE COURT AS CLIENT'S CLAIMS.

As illustrated above, petitioner was denied effective assistance of counsel because there was numerous instances on the trial record where counsel was presented with opportunities to make a good faith argument on and have the court take notice of petitioner's intention to defend against the alleged making of the confession under the theory of police fabrication of this evidence. <u>Tejada v. Dubois</u>, 142 F.3d 18, 24 (1st Cir. 1998). In fact, counsel was fully aware of the court's determination of petitioner's real dispute, i.e. Police Fabrication, at the Suppression Hearing, when the court stated,

> "The real dispute in this case relates primarily to whether the defendant says what the government says he said, not to the <u>Miranda</u> issue." See: Order of the Court Motion to Suppress, Dkt. #63, P. 2.

By counsel opting, without petitioner's consent or directives, to present false statements of material facts and law, namely based on <u>Miranda</u>, <u>Brady</u>, and <u>Jencks</u> violations throughout the proceedings, as petitioner's actual claims and/or defense(s). The court may have overlooked the prejudicial effect of counsel's unprofessional behavior and it's effect to petitioner's right to a fair trial. In <u>Sanders v. Rattelle</u>, the court held,

> "...it is rarely a good strategic decision to advance a transparent lie as your client's primary defense, and certainly not when there is more plausible defense available." 21 F.3d 1446, 1460 (9th Cir. 1994).

Counsel was under a legal and contractual obligation to file the appropriate pleadings reflecting petitioner's legal and factual objectives and claims to the court and the jury. See: Mass.R.Pro.C., Rule(s) 1.1, 1.2, 1.3, & 1.4.

For counsel to have coerced petitioner into believing and accepting the aforementioned violations as the appropriate remedies to seek relief for petitioner's true and unrepresented defense of police fabrication, constitutes prejudice satisfying the prejudice prong of <u>Strickland</u>, and the denial of his 6th Amendment right to assistance of counsel in his defense. <u>Id</u>. 466 US at 693-694.

### D. FOR FAILURE TO APPRAISE PETITIONER OF HIS CONFLICT OF INTEREST WITH TWO AGENTS ACTIVELY INVOLVED IN PETITIONER'S CASE.

Petitioner was denied effective assistance of counsel because counsel, under his professional obligation, failed to appraised petitioner of his personal and working relationship with both Agent Richard Soto and Agent Joseph Finnegan, during his representation of petitioner's case. Strickland, 466 US at 689. Counsel erroneously moved the court by motion to consider Miranda, Brady, and Jencks violations, as being petitioner's claims for relief. The findings made thereof and the record evidence support this eror of counsel as solely made, for no other reason, than under the influence of his relationship with these agents, which adversely affected his performance and was in direct conflict with petitioner's true defense of police fabrication. Cuyler v. Sullivan, 446 US at 350.

The facts supporting counsel's actual conflict of interest are new matter disclosed and arising outside the record worthy of an evidentiary determination. Mack v. US, 635 F.2d 20, 26-27 (1st Cir. 1980). Furthermore, the court must take petitioner's fact-specific allegations, supported by affidavit, of counsel representing an actual conflict of interest as true. US v. McGrill, 11 F.3d 223 (1st Cir. 1993). The record, in this case, does not represent otherwise, it may have if and only, the record demonstrates that petitioner after disclosure of this relationship by counsel, had knowingly agreed to have counsel continue to be his representative. See: Mass.Pro.R.Prof.C., Rule 1.7(b)(2); Comment (4).

Petitioner states that had he known about this relationship, petitioner would not have had counsel represent him, ab initio, because petitioner's defense of police fabrication would have adversely affected counsel's legal and contractual duty to zealously represent his interest in the mist of counsel's competing interest with these agents. US v. Rogers, 209 F.3d 139, 146 (2nd Cir. 2000); Mass.Pro.R.Prof.C., Rule 1.3. Certainly, it was this defense for reasons based

on this concealed relationship, that counsel stated, "... we do not have a meeting of the mind pertaining to trial tactics...". [Final Status Con., 1/3/00, P. 3]. Counsel's loyalty to petitioner was impaired when he could not carry out the appropriate course of action in defending effectively against the government's witnesses and evidence.

Counsel stated moments before closing arguments,

> "Every individual has a right to put a defense and it's for them (jury) to judge the particular credibility...". [Tr.Trans. Vol. VIII, P. 1075 - 76].

Yet, counsel did not afford the court or the jury petitioner's defense of police fabrication, when considering the numerous inconsistencies surrounding the making of the confession was, in part, clearly brought out and both the court and the government conceded to their impeachment value, when they stated,

> "THE COURT: ... The inconsistencies that you talk about were fully brought out in the cross-examination ...". [Tr.Trans. Vol. VI, P. 869].

In counsel seeking a mistrial based on a *Jencks* violation, the government stated,

> "MR. WELCH: ... I would say that the defendant has not been prejudiced by the fact that at least orally it clearly has been brought out on cross-examination that there is a variance in the sense of the contents of the rough notes, only two lines, versus a fairly extensive report that covered approximately five paragraphs." Id. at 864.

At sentencing, regarding the issue of Agent Soto's notes, the government stated,

> "MR. NEWHOUSE: .... That's kind of the four-square smack in the head impeachment that defense attorneys look for all the time of particular law enforcement agents and find probably in only a handful of times in their careers. That's the impeachment, that's the kind of --- to the extent there's going to be one, that's a knockout blow --- I didn't make notes; I did make notes, and I probably threw them away or shredded." See: [Sen.Trans., P. 19].

As illustrated above, any reasonable attorney would have zealously, under the circumstances of this case, presented a defense of police fabrication, which

12

was truth-enhancing of petitioner's factual claims against the confession. US v. Porter, 924 F.2d 395, 397 (1st Cir. 1991). Surely, is not whether this defense would have been successful, but whether it was the most viable defense that could have appropriately meet petitioner's objectives at trial, i.e., proving that the confession was a fabricated product of the agents. Brien v. US, 695 F.2d 10, 15 (1982). The seeking of remedy under Miranda, Brady, and Jencks violations by counsel, unquestionably prejudiced petitioner because it was the agent's outrageous misconduct surrounding these violations that, if consolidated provided the necessary support to establish police fabrication.

The following is illustrative, and not exhaustive, of the agent's misconduct and evidence available to substantiate a police fabrication argument, and to warrant a jury instruction based on this defense.

1. INTERNAL INCONSISTENCIES OF THE AGENT'S TESTIMONY SURROUNDING THE ALLEGED MAKING OF THE CONFESSION.

   (a). Case agent/Supervisor Alex Baginski, in attempting to obtain a search warrant, walked inside the interrogation room to allegedly ask Mr. Fontanez some questions [Mot.Sup. Vol. I, P.104-105]. He asked Mr. Fontanez in the presence of both Agent Soto and Supervisor David Aldridge, if Mr. Fontanez had been Mirandarized. Where these agents stated that Mr. Fontanez was Mirandarized and was cooperating. Id. at 105.

   (i). On the other hand, Agent Soto never stated, either at the Suppression Hearing and in his DEA-6 report, that Supervisor Baginski ever inquired of Mr. Fontanez being Mirandarized. Id. at 23-24. Subsequently, Agent Soto stated that while Supervisor Baginski was inside the interrogation room, it was without the presence of Supervisor David Aldridge. In fact, it was not until Supervisor Baginski leaves this room, that then Supervisor Aldridge walks inside. Neither Supervisor Baginski nor Supervisor Aldridge was ever aware of each other's presence while inside the interrogation room. Id. at 26.

   (ii). Supervisor Aldridge provides a different rendition of the events. He stated never administering Miranda warnings and did not see or hear anyone else administer them while being inside the interrogation room. Id. at 74. Since neither of these Supervisors were in each other's presence, it leaves Agent Soto all by himself in his contention of petitioner making a confession.

   (b). Most importantly, Agent Soto later stated that Agent Jusino witnessed

13

       Mr. Fontanez make a voluntary confession. <u>Id</u>. at 27. However, Agent Jusino stated that at no time did he ever witness Mr. Fontanez making any statements to Agent Soto, or to any other agent. [Mot.Sup. Vol. II, P. 13].

(c). Strikingly, in Supervisor Alex Baginski's Complaint Affidavit prepared and filed on October 10, 1998, makes no mention, at all, of a confession made by Mr. Fontanez. [Exhibit B].

(d). In his career, Agent Soto admits of taking over one hundred (100) statements, and that his ordinary process is, to allow suspects to see and read "Miranda Warnings" forms and the opportunity for the suspect to write his/her own statement or if not, give them the opportunity to review the statement typed or written by the officer, where it provides the suspect an opportunity to examine the statement for accuracy before the suspect signs it. [Tr.Trans. Vol IV, P. 495-496]. Curiously, when it came to Mr. Fontanez, Agent Soto contradicts his usual aforementioned practice and process. [Tr.Trans. Vol. IV, P. 538-539].

2. FIVE DIFFERENT VERSIONS AS TO WHO INITIATED THE QUESTIONING OF PETITIONER.

(a). Agent Jusino stated at the Suppression Hearing, that he allegedly read Mr. Fontanez his rights and then Agent Soto initiated the questioning. [Mot.Sup. Vol. II, P. 9-10].

(b). Agent Soto stated that, it was Supervisor Alex Baginski, who initiated the questioning. <u>Id</u>. at Vol. I, P. 23-24].

(c). Later Agent Soto stated that, it was Supervisor Aldridge, who initiated the questioning. <u>Id</u>. at Vol. I, P. 56-58].

(d). At trial, Agent Soto stated otherwise that, Supervisor Aldridge only spoke with Mr. Fontanez, but did not question him. [Tr. Trans. Vol. IV, P. 537].

(e). Later at trial, Agent Soto stated that, it was Agent Jusino and himself, who initiated the questioning. <u>Id</u>. at Vol. I, P. 72-73].

3. THE DISPARITY OF THE CONFESSION'S PREPARATION DATE WITH IT'S DATE WITHIN THE GOVERNMENT'S DOCUMENTS.

(a). The report of Agent Soto, containing the purported statements of petitioner, was dated and prepared on October 9, 1998. This date is in disparity with the prosecution's discovery response dated on November 30, 1998, where is said, "...A DEA-6 Form summarizing any post-arrest statements is currently being prepared...". See: [Dkt. # 43].

(b). It is apparrent that the disparity is over a month and twenty (20) days difference between the alleged preparation date of Agent Soto's report and of the, later, current preparation of this report on

November 30, 1998, as stated in the prosecution's (USDA William M. Welch) discovery response to its discovery request by Attorney Mr. Rooke.

4. THE ALLEGED EXISTENCE, NON-EXISTENCE, AND THE DESTRUCTION OF AGENT SOTO'S NOTES.

  (a). By policy, agents "... will therefore preserve any such notes, even though their contents have been subsequently reported on a DEA-Form 6"; "... The notes will be preserved in an envelope attached to the case file"; "Written notes may be destroyed only upon closing the case..."; and "Failure to produce these notes, ... could result in dismissal of the case...." See: Special Agents Manual (DEA), "PRESERVATION OF INVESTIGATIVE NOTES", § 6211.6 (A)(F)(G). A copy of these notes must be provided to the prosecution within 5 working days in a DEA-6 Form entitled "Report of Arrest". Id. at § 6641.36 (A-E).

  (b). Despite policy, Agent Soto, at the Suppression Hearing, stated to not having taken any notes regarding the purported confession made by petitioner [Mot.Sup. Vol., P. 34]. Otherwise, at trial, he said that he did take notes which fully reflected the petitioner's statements during the 45 minutes of interrogation [Tr.Trans. Vol. IV, P. 507]. Upon further examination, Agent Soto progressively minimized its contents to a half-of-page, then subsequently to a mere one-or-two lines of notes. Id. at 531. Where eventually, it led to their destruction by Agent Soto, and the prosecution was at a lost to their whereabouts. Id. at 539-541.

5. THE AGENTS CONTINUED QUESTIONING DESPITE PETITIONER'S FIVE (5) UNEQUIVOCAL REQUEST TO SPEAK TO COUNSEL.

  (a). At the Suppression Hearing, Agent Soto stated that questioning ceased when petitioner asked to speak with his attorney, only after petitioner provided the confession, and that no other conversation took place between petitioner and any other agent once the request was made [Mot.Sup. Vol. I, P. 29]. Yet, Agent Jusino stated that soon after Agent Soto finished questioning petitioner, Agent Greg Finning had a conversation with petitioner that was going back and forth [Mot.Sup. Vol. II, P. 17-18].

  (b). This exact testimony by Agent Jusino, was given by petitioner prior to Agent Jusino testifying. Whereby petitioner illustrated that, it was Agent Greg Finning, and not Agent Soto, who demanded, from petitioner, the making of a statement [Mot.Sup. Vol. I, P. 135-141]. Thus, leading to the conclusion that, there would have been no need, after-the-fact, for Agent Greg Finning to demand petitioner to make a statement, if according to Agent Soto, he (Mr. Soto) had already allegedly obtain one from petitioner prior to Agent Finning demanding one.

Petitioner is not a professional well-learned in the law, but does state confidently that, the aforementioned facts and circumstances, inter alia, support

15

and substantiate petitioner's theory of police fabrication. Tejada v. Dubios, 142 F.3d 18, 24 (1st 1998). The question begs, if petitioner was so free-willing to provide inculpatory statements, then, this would have been a clear case where, "the palest ink is better than the best memory". It is very difficult to make a fabrication (i.e. confession) agree with all the circumstances, truth alone can withstand all. The circumstances, facts, documents, and testimony progressively adduced throughout the proceedings do not agree with the agent's fabricated story of petitioner making a confession. All of the discrepancies and inconsistencies are not by mere accident or innocent mistake, but simply due to the irrefutable fact that petitioner never made any statements, other than five (5) unequivocal request to speak with his counsel, all which were dishonored.

The agent's misconduct speaks for itself, and petitioner had the right to have counsel permit the jury to draw from it, and weigh its value against petitioner's defense of police fabrication. Duboic, 142 F.3d at 25. In addition, there is counsel's stipulation, without petitioner's consent, to foreclose Agent Joseph Finnegan's testimony at the Suppression Hearing, which had the same spill-over effect at trial. For counsel to have stipulated away Agent Finnegan's testimony, deprived petitioner of crucial-examination into the underlying misconduct of either Supervisor Alex Baginski or Supervisor David Aldridge's denial of petitioner's request, the request being forward by Agent Finnegan, to have access to his attorney [Mot.Sup. Vol. I, P. 69-72].

Under the standard of reasonableness, any reasonable attorney, considering the aforementioned facts and circumstances, would have found Agent Finnegan to be instrumental in opening the minds of the jury to accept that, officers are just as capable of lying, falsifying documents, and committing crimes. Under Rule 608(b) and 609(a)(2) of the Federal Rules of Evidence, Agent Finnegan's indictment and subsequent conviction for, DEFRAUDING INSURER, PERJURY ALLEGING

16

MOTOR VEHICLE THEFT, and FILING A FRAUDULENT INSURANCE CLAIM, would have been admissible evidence bearing on the issue of credibility. Furthermore, it would have been necessary in establishing motive and intent on the part of the agent's to fabricate evidence against petitioner, since Agent Finnegan had knowledge of petitioner's request to speak with counsel and of his supervisor's illicit denial of petitioner's request. Whereby, it establishes a knowing misconduct in the presence of Agent Finnegan, and by such occurence provides the necessary support that renders the making of the confession suspect. Cree v. Hatcher, 969 F.2d 34 (3rd Cir. 1992).

As a result, absent a filed answer by counsel in opposition, the court's characterization of petitioner's allegations against counsel as a "suggestion" and having "no substantive basis on the record", is simply wrong. Counsel's admissions, to both petitioner and to petitioner's mother [Exhibit C], of laboring under a conflict of interest and that the confession was fabricated against petitioner, are not reflective of the court's ruling. See: [Affidavit in Support of Motion for Leave to Amend, Point 5 (a)-(c)]. A substantial showing has been demonstrated in establishing that, counsel's relationship with these two agents adversely affected his professional judgment and his performance throughout the proceedings, where it deprived petitioner of his constitutional right of conflict-free assistance of counsel, and of the right to a fair trial. Reyes-Vejerano v. US, 276 F.3d 94 (1st Cir. 2002); Strickland, 466 US at 684.

## CONCLUSION

The identified acts or omissions of counsel, in light of all the circumstances were outside the wide range of professional competent assistance, and provide a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different. Strickland, 466 US at 690-694. The resultant prejudice

by counsel errors and conflict of interest, provide the rationale in establishing the existence of a reasonable probability, a probability sufficient to undermine confidence in the outcome and rendering its results fundamentally unfair and unreliable. Scarpa v. Dubois, 38 F.3d 1, 16 (1st Cir. 1994); Lockhart v. Fretwell, 506 US 364, 369.

Therefore, petitioner was deprived of his constitutional right to effective assistance of counsel during his trial. An evidentiary hearing should have been granted by the district court and the court's denial to petitioner's § 2255 relief without an evidentiary determination renders it's resolution debatable among jurist of reason. For the aforementioned reasons, a COA should be issued, as petitioner has made a substantial showing of a denial of his constitutional rights. Miller-El v. Cockrell, 154 L.Ed.2d 931 (2003).

Respectfully submitted,

_____
Rafael Fontanez, Petitioner

CERTIFICATE OF SERVICE

I, Rafael Fontanez, do hereby affirm that the foregoing has been placed in the prison mail box on this day 1` of July of 2004, pursuant to Houston v. Lack, 487 US 266 (1988).

_____
Rafael Fontanez, Petitioner

18