MEMORANDUM IN SUPPORT FOR MOTION FOR LEAVE
TO AMEND CERTIFICATE OF APPEALABILITY

FILED

-2

U.S. DISTRICT COURT

Comes now, petitioner for good cause and amends his original COA filing,
and states that, in light of Blakely v. Washington, the court's imposed sentence
of 216 months, rendered on January 30, 2001, violated petitioner's Sixth Amendment
right to a trial by jury. See: 2004 WL 1402697 (U.S. Wash.).  By amemding,
petitioner respectfully request that, the court review his sentence, determine
whether Blakely would have affected the calculation of his sentence, because
the facts found by the jury verdict only authorized a statutory maximum sentence
of 30 - 37 months, and accordingly correct said sentence.

### STATEMENT OF JURISDICTION

This court has jurisdiction to annex the following issue into petitioner's
original pleadings.  In addition, it has the authority to hear and address
petitioner's sentencing issue to correct his sentence, in light of Blakely,
because the language of 28 U.S.C. § 2255 expressly vests this power in the
district court:

> If the court finds that ... the sentence imposed was not authorized
> by law or otherwise open to collateral attack or that there has been
> such a denial or infringement of the constitutional rights of the
> prisoner as to render the judgment vulnerable to collateral attack.
> the court shall vacate and set the judgment aside and shall discharge
> the prisoner or resentence him or grant a new trial or correct the
> sentence as may appear appropriate.  See: U.S. v. Rodriguez, 112 F.2d
> 26, 29 (1st Cir. 1997).

In U.S. v. Torres-Otero, the court held, "The § 2255 remedy is broad and
flexible, and entrusts to the courts the power to fashion an appropriate remedy."
232 F.3d 24, 30 (1st Cir. 2000).  Petitioner's request for remedy is within
its equitable discretion when acting to "correct the sentence as may appear
appropriate", or if it finds "that the sentence was not authorized by law."

1

Id. at 31.  This is so because a district court's power under § 2255 "is derived
from the equitable nature of Habeas Corpus relief." Id.; Schlup v. Delo, 513
US 298, 319, 130 L.Ed.2d 808 (1995) ("Habeas Corpus is, at its core, an equitable
remedy.").

### BACKGROUD FACTS

On 10/6/98, petitioner was arrested by the DEA and charged with violations
of 21 U.S.C. § 841 and 846.  On 10/15/98, the grand jury returned an eight (8)
count indictment (NO.: 98-30041-MAP), holding petitioner to answer to counts
1, 6-8. See: [Exhibit D].  After pre-trail proceedings, a Final Status Conference
Hearing was conducted on 1/3/00, and trial was set for 1/10/00.  At trial, the
jury verdict found, on 1/20/00, petitioner guilty of the aforementioned counts.
On 1/30/01, a sentencing hearing was conducted by Judge Michael A. Ponsor and
based on law (Apprendi) construed by the circuit courts and in existence at
the time of petitioner's sentencing, petitioner argued that since the indictment
failed to state a specific drug quantity, the jury's verdict only authorized
the court to impose a sentence, based on an "undetermined amount" of controlled
substance under 21 U.S.C. § 841(b)(1)(C), not exceeding the 20 year "statutory
maximum" prescribed by statute.

The court, in consideration of Apprendi and uncertain of its legal appli-
cation to petitioner's sentence, sentenced him to 216 months, with a 5 year
term of supervised release, under 21 U.S.C. § 841(b)(1)(C).  On 2/2/01, petitioner
filed a "Notice of Appeal" to the First Circuit Court of Appeals, and based
upon the circuit courts' understanding of Apprendi at the time of petitioner's
appeal, petitioner (as it would seem) could not argue further under it's
principles, but appealed on other grounds.  On 5/29/02, the First Circuit court
affirmed his conviction.  Then, on 8/22/02, petitioner sought for a Writ of
Certiorari from the U.S. Supreme Court, where it subsequently denied it on

1/13/03.

On 1/9/04, petitioner collaterally attack his conviction in this court under
§ 2255 Motion, based upon the denial of his Sixth Amendment right to effective
assistance of counsel. Wherefore, on 6/18/04, the court entered the Order which
denied said motion and dismissed the petition. Following said order, petitioner,
on 7/13/04, filed an application for a COA, which is currently pending.

Now, in light in Blakely or Apprendi properly construed, petitioner amends
his application for a COA, and respectfully request that the court issue a COA
on grounds that petitioner's current sentence of 216 months is in violation of
his Sixth Amendment right to a trial by jury; where for Apprendi purposes, the
maximum sentence the judge could have imposed was the applicable guideline range
of 30 - 37 months, within a Base Level of 12, under Category VI, as authorized
by the jury's verdict.

Therefore, petitioner maintains the he is entitled to redress on the following
grounds, which substantially show the he was denied his constitutional rights:

> II. THE COURT'S IMPOSED SENTENCE OF 216 MONTHS, WHICH
> DOES NOT REFLECT THE STATUTORY MAXIMUM SENTENCING
> RANGE OF 30 - 37 MONTHS AUTHORIZED BY THE FACTS
> FOUND BY THE JURY, VIOLATED PETITIONER'S SIXTH
> AMENDMENT RIGHT TO A TRIAL BY JURY.

Petitioner was denied his Sixth Amendment right to a trial by jury, when
the court's imposed sentence does not constitutionally reflect the maximum appli-
cable sentence authorized by the jury's verdict. Blakely v. Washington, 2004
WL 1402697 at *4. At the time of petitioner's sentencing, Apprendi v. New Jersey,
530 US 466 (2000), limited his sentence to the statutory maximum under 21 U.S.C.
§ 841(b)(1)(C), because no finding as to drug quantity was determined by the
jury. [Sen.Trans., P. 67, 1/30/01]. This court, as it understood Apprendi, sen-
tence petitioner to 216 months within the 20 year maximum under 21 U.S.C. § 841

3

(b)(1)(C).  The court's understanding of Apprendi was subsequently affirmed in
the First Circuit court's decision in U.S. v. Robinson, when it said

> Apprendi is violated where judge-made factual determination actually
> boosts defendant's sentence beyond the basic statutory maximum; theore-
> tical exposure to higher maximum punishment, unaccompanied by imposition
> of higher sentence that exceeds statutory maximum, is not enough for
> Apprendi violation.  241 F.3d 115, 121-122 (1st Cir. 2001).

    As a result, petitioner could not have advanced, on direct appeal, a sentencing
argument under the principles of Apprendi, because the court would have found
it to be without merit or subjected it to an harmless error analysis.  In U.S.
v. Green, Chief Judge William G. Young noted that the Federal Courts of Appeals
have uniformly upheld guidelines enhancements based on judge-made findings when
the sentence does not exceed the statutory prescribed maximum punishment.  No.
02-10054-WGY (D.Mass. 6/18/04).  The Green court, ruling without the aid of the
Blakely opinion, stated that

> "... the distinguishing feature on which the shifting majorities in Ring
> and Apprendi turn is not, as the court of appeals have apparently assumed,
> the relation between a sentencing factor and a statutory prescribed
> maximum punishment, but rather the practical reality of whether finding
> a fact increases the punishment to which a criminal defendant is exposed."
> Id.

## A.  APPRENDI'S RULE AT THE TIME OF PETITIONER'S SENTENCING.

    The bright-line rule of Apprendi was the law in existence at the time of
petitioner's sentencing, but the extent of its application, in terms of establi-
shing the relevant statutory maximum applicable to a defendant's punishment as
authorized by facts found by the jury, was not correctly defined until the decision
made in Blakely, where it stated

> Our precedents make clear ... that the "statutory maximum" for Apprendi
> purposes is the maximum sentence a judge may impose **solely on the basis
> of the facts reflected in the jury verdict** or admitted by the defendant
> .... In other words, the relevant "statutory maximum" is not the maximum
> sentence a judge may impose after finding additional facts, but the

4

maximum he may impose without any additional findings.  2004 WL 1402697
at *4.

Since the Blakely decision is based on law in existence at the time of peti-
tioner's sentencing, petitioner's sentence is open to collateral attack.  See:
Teague v. Lane, 489 US 280, 301, 103 L.Ed.2d 334 (1989); Blakely at *16, Part
IV(a).  In light of Blakely, the court must determine whether the maximum statutory
range is 20 years under 21 U.S.C. § 841(b)(1)(C) or whether it is the range per-
mitted under the federal guiline scheme.  The U.S. Sentencing Guilines have the
force of law and are binding legislative rules that a court must follow to impose
sentence.  U.S. v. Stinson, 588 US 36, 42, 45 (1993).

In Blakely, the court reason that, "This case is not about whether determinate
sentencing is constitutional, only about how it can be implemented in a way that
respects the Sixth Amendment."  Id. at *7.  Being that the Sentencing  Guidelines
meet the definition of a "determinate sentencing scheme", "The guidelines are
the law which bind this court in sentencing matters, and to the extent that the
guidelines can be applied in a manner consistent with the Sixth Amendment, the
court shall strive to do so."  U.S. v. Shamblim, No. 2:03-00217 (S.D.W.V. 2004).

Now, in light of Blakely, the court is ask to (1) determine the facts on
which it is constitutionally permissible to base the petitioner's sentence and
the maximum sentence permitted by these facts, and (2) compare the maximum sentence
permitted to that imposed.  Shamblim, at 15.

B.  FACTS AS FOUND BY THE JURY VERDICT.

The prescribed "statutory maximum" for Apprendi purposes is the maximum
sentence a judge may impose solely on the basis of the facts reflected in the
jury verdict...."  Blakely at *4.  The jury verdict alone must "authorize the
sentence".  Id. at *5.  In this case, the indictment failed to state the element
of drug quantity and no quantity was proven to, or determined by the jury.  The

5

jury verdict reflects that, it found petitioner guilty of conspiracy (count 1) in possession with intent to distribute (counts 6-8) an "undetermined amount" of cocaine base.

At sentencing, the court made it's own findings based upon the facts found by the jury, and sentence petitioner to 216 months under 21 U.S.C. § 841(b)(1)(C). The facts found by the jury verdict does not constitutionally find permissible the sentence imposed by this court. In Blakely, the court held,

> When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment ... and the judge exceeds his proper authority." Id. at *4.

The maximum sentence or punishment permitted by these facts is one with an applicable guideline range of 30 - 37 months, within a Base Offense Level of 12, under Category VI. See: U.S.S.G. § 2D1.1(c)(14). The base offense level of 12, is determined by "the controlled substance quantity deemed to be the smallest amount prosecutable" for cases where the jury does not find defendants guilty of a specific amount of a controlled substance. Shamblim at 15, n. 18. A sentence within the applicable guideline range of 30 - 37 months is one within the power of this court to impose, where in its imposition will respect petitioner's Sixth Amendment rights undertood by the Framers of the Constitution. Blakely at *7.

In comparing the maximum sentence permitted to the one imposed, the court would have to take notice of the potential 179 months, or 14 years and 11 months, difference, when considering that the 216 months imposed sentence is not authorized by the jury's verdict in this case. As it stands, the sentence imposed violated petitioner's Sixth Amendment right to a trial by jury, where his punishment does not reflect it's authority and prejudice is manifested therein. Petitioner, presently, does not know which standard of error is applicable, but does state that the error is eminent in his sentence and the court has the authority to correct it.

## C. REMEDY

For the aforementioned reasons, the upper bound of the appropriate guideline range, based on facts proven to a jury beyond a reasonable doubt or admitted by the defendant, establishes the relevant statutory maximum for Apprendi purposes. The guideline range of 30 - 37 months, within a Base Offense Level of 12, under Category VI, reflect the maximum punishment the court may impose, based upon the facts found by the jury's verdict, in petitioner's case.

Therefore, petitioner respectfully request that the court, (1) consider his Blakely (or Apprendi properly construed) issue amended to his original COA application, (2) issue a COA on it's premises and order the government to respond, and (3) correct petitioner's sentence and issue the order to release him immediately from custody, as petitioner has currently discharged 69 months of the original sentence of 216 months, which is now assessed at 32 months in overcharge of the authorized 30 - 37 months found by the jury's verdict in this case.

Respectfully submitted,

Rafael Fontanez, Petitioner

CERTIFICATE OF SERVICE

I, Rafael Fontanez, do hereby affirm that the foregoing has been placed in the prison mail box on this _27th_ day of July of 2004, pursuant to Houston v. Lack, 487 US 266, and a copy has been sent to the First Circuit Court of Appeals.

cc.
Office of the Clerk
Richard Cushing Donovan, Clerk
United States Court of Appeals
John Joseph Moakley U.S. Couthouse
1 Courthouse Way - Suite 2500
Boston, Mass. 02210

Rafael Fontanez. Petitioner

EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIM. NO. 98-30041- MAP |
| vs. | VIOLATIONS: |
| ANTHONY BLEDSOE, aka "Ice", RAFAEL FONTANEZ, and CARLOS QUINONES, | 21 U.S.C. § 846 - Conspiracy to Possess with Intent to Distribute and to Distribute Cocaine Base (Count One) |
| _____ Defendants. | |

21 U.S.C. § 841(a)(1)
Distribution of Cocaine Base
(Counts Two through Eight)

18 U.S.C. § 2 - Aiding and
Abetting (Counts Two
through Eight)

The Grand Jury charges that:

COUNT ONE:    Title 21, United States Code, Section 846 –
Conspiracy with Intent to Distribute
and to Distribute Cocaine Base

Beginning at a time unknown to the Grand Jury, but no later

than June 29, 1998, and continuing until October 6, 1998, in

Springfield, Massachusestts,

ANTHONY BLEDSOE, aka "Ice"
RAFAEL FONTANEZ,
and
CARLOS QUINONES,

defendants herein, did knowingly and intentionally combine,

conspire, confederate, and agree with each other, and with

others, both known and unknown to the Grand Jury, to commit an

offense against the United States, namely to possess with intent

to distribute and to distribute a quantity of a mixture or

substance containing a detectable amount of cocaine base, a

Schedule II Controlled Substance, in violation of Title 21,

United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Sections 846 and 841(a)(1).


### Applicability of 21 U.S.C. § 841(b)(1)(A)(iii)

The conspiracy to possess with intent to distribute and to distribute cocaine base described in Count One of this Indictment involved fifty grams or more of a mixture or substance containing a detectable amount of cocaine base, a Schedule II Controlled Substance.  Accordingly, Title 21, United States Code, Section 841(b)(1)(A)(iii) applies to Count One.

2

**COUNT TWO:**        **Title 21, United States Code, Section 841(a)(1) –
                      Distribution of Cocaine Base**

On or about July 1, 1998, in Springfield, Massachusetts,

**ANTHONY BLEDSOE, aka "Ice",**

defendant herein, did knowingly and intentionally distribute a
mixture or substance containing a detectable amount of cocaine
base, a substance controlled under Schedule II, Title 21, United
States Code, Section 812;

All in violation of Title 21, United States Code, Section
841(a)(1) and Title 18, United States Code, Section 2.

**Applicability of 21 U.S.C. § 841(b)(1)(B)(iii)**

The distribution of cocaine base described in Count Two of
this Indictment involved five grams or more of a mixture or
substance containing a detectable amount of cocaine base, a
Schedule II Controlled Substance.  Accordingly, Title 21, United
States Code, Section 841(b)(1)(B)(iii) applies to Count Two.

3

<u>COUNT THREE</u>:    Title 21, United States Code, Section 841(a)(1) -
                  Distribution of Cocaine Base

On or about July 8, 1998, in Springfield, Massachusetts,

**ANTHONY BLEDSOE, aka "Ice",**

defendant herein, did knowingly and intentionally distribute a
mixture or substance containing a detectable amount of cocaine
base, a substance controlled under Schedule II, Title 21, United
States Code, Section 812;

All in violation of Title 21, United States Code, Section
841(a)(1) and Title 18, United States Code, Section 2.

**Applicability of 21 U.S.C. § 841(b)(1)(B)(iii)**

The distribution of cocaine base described in Count Three of
this Indictment involved five grams or more of a mixture or
substance containing a detectable amount of cocaine base, a
Schedule II Controlled Substance.  Accordingly, Title 21, United
States Code, Section 841(b)(1)(B)(iii) applies to Count Three.

4

COUNT FOUR:    Title 21, United States Code, Section 841(a)(1) –
               Distribution of Cocaine Base

On or about July 16, 1998, in Springfield, Massachusetts,

**ANTHONY BLEDSOE, aka "Ice",**

defendant herein, did knowingly and intentionally distribute a

mixture or substance containing a detectable amount of cocaine

base, a substance controlled under Schedule II, Title 21, United

States Code, Section 812;

All in violation of Title 21, United States Code, Section

841(a)(1) and Title 18, United States Code, Section 2.

**Applicability of 21 U.S.C. § 841(b)(1)(B)(iii)**

The distribution of cocaine base described in Count Four of

this Indictment involved five grams or more of a mixture or

substance containing a detectable amount of cocaine base, a

Schedule II Controlled Substance.    Accordingly, Title 21, United

States Code, Section 841(b)(1)(B)(iii) applies to Count Four.

**COUNT FIVE:**        Title 21, United States Code, Section 841(a)(1) –
Distribution of Cocaine Base

On or about August 7, 1998, in Springfield, Massachusetts,

**ANTHONY BLEDSOE, aka "Ice",**
**and**
**CARLOS QUINONES,**

defendants herein, did knowingly and intentionally distribute a
mixture or substance containing a detectable amount of cocaine
base, a substance controlled under Schedule II, Title 21, United
States Code, Section 812;

All in violation of Title 21, United States Code, Section
841(a)(1) and Title 18, United States Code, Section 2.

**Applicability of 21 U.S.C. § 841(b)(1)(A)(iii)**

The distribution of cocaine base described in Count Five of
this Indictment involved fifty grams or more of a mixture or
substance containing a detectable amount of cocaine base, a
Schedule II Controlled Substance.  Accordingly, Title 21, United
States Code, Section 841(b)(1)(A)(iii) applies to Count Five.

6

**COUNT SIX:**      Title 21, United States Code, Section 841(a)(1) -
             Distribution of Cocaine Base

On or about August 20, 1998, in Springfield, Massachusetts,

**ANTHONY BLEDSOE, aka "Ice"**
**RAFAEL FONTANEZ,**
**and**
**CARLOS QUINONES,**

defendants herein, did knowingly and intentionally distribute a

mixture or substance containing a detectable amount of cocaine

base, a substance controlled under Schedule II, Title 21, United

States Code, Section 812;

All in violation of Title 21, United States Code, Section

841(a)(1) and Title 18, United States Code, Section 2.

**Applicability of 21 U.S.C. § 841(b)(1)(A)(iii)**

The distribution of cocaine base described in Count Six of

this Indictment involved fifty grams or more of a mixture or

substance containing a detectable amount of cocaine base, a

Schedule II Controlled Substance.  Accordingly, Title 21, United

States Code, Section 841(b)(1)(A)(iii) applies to Count Six.

7

COUNT SEVEN:    Title 21, United States Code, Section 841(a)(1) -
                Distribution of Cocaine Base

On or about September 8, 1998, in Springfield,

Massachusetts,

ANTHONY BLEDSOE, aka "Ice"
RAFAEL FONTANEZ,
and
CARLOS QUINONES,

defendants herein, did knowingly and intentionally distribute a

mixture or substance containing a detectable amount of cocaine

base, a substance controlled under Schedule II, Title 21, United

States Code, Section 812;

All in violation of Title 21, United States Code, Section

841(a)(1) and Title 18, United States Code, Section 2.

Applicability of 21 U.S.C. § 841(b)(1)(A)(iii)

The distribution of cocaine base described in Count Seven of

this Indictment involved fifty grams or more of a mixture or

substance containing a detectable amount of cocaine base, a

Schedule II Controlled Substance.  Accordingly, Title 21, United

States Code, Section 841(b)(1)(A)(iii) applies to Count Seven.

8

**COUNT EIGHT:**    **Title 21, United States Code, Section 841(a)(1) –**
**Distribution of Cocaine Base**

On or about October 6, 1998, in Springfield, Massachusetts,

**ANTHONY BLEDSOE, aka "Ice"**
**RAFAEL FONTANEZ,**
**and**
**CARLOS QUINONES,**

defendants herein, did knowingly and intentionally distribute a
mixture or substance containing a detectable amount of cocaine
base, a substance controlled under Schedule II, Title 21, United
States Code, Section 812;

All in violation of Title 21, United States Code, Section
841(a)(1) and Title 18, United States Code, Section 2.

**Applicability of 21 U.S.C. § 841(b)(1)(A)(iii)**

The distribution of cocaine base described in Count Eight of
this Indictment involved fifty grams or more of a mixture or
substance containing a detectable amount of cocaine base, a
Schedule II Controlled Substance.  Accordingly, Title 21, United
States Code, Section 841(b)(1)(A)(iii) applies to Count Eight.

9

A TRUE BILL,

_____
FOREPERSON OF THE GRAND JURY

_____
WILLIAM M. WELCH II
Assistant United States Attorney

DISTRICT OF MASSACHUSETTS: _October 15, 1998_ , 1998

Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK OF THE COURT

12:00 PM